LYNN GAVIN
1920 OCEAN AVENUE, APT 2E
SAN FRANCISCO, CA 94127





FILED
CLERK U.S. DISTRICT COURT

FEB 1 5 2017

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

BAMIDELE HAMBOLU; individually;
~~IBUKUN HAMBOLU~~; individually; LYNN
GAVIN; individually; AND ALL OTHERS
SIMILARLY-SITUATED;

      Plaintiffs,

vs.

FORTRESS INVESTMENT GROUP;
LAURENCE GLUCK; STELLAR
MANAGEMENT; SETH MALLEN;
BERNARD POLACCI; PARKMERCED
INVESTORS PROPERTIES, LLC; ROBERT
A. ROSANIA; FCOF PM EQ, LLC;
FORTRESS CREDIT CORPORATION;
AMERICAN UTILITY MANAGEMENT;
PRINCIPALS; BOND HOLDERS;
SHAREHOLDERS; in individually and
official capacity, and Does 1-10 et al.

      Defendants.

Case No.:

**CV 17 - 01233 RGK (PJW)**

**COMPLAINT**

FEDERAL DEBT COLLECTION
PRACTICES ACT 15 U.S.C. § 1692 *et seq*

**JURY TRIAL DEMANDED**

# TABLE OF CONTENTS

Page(s)

Nature of Action ................................................................... 03

I.      Jurisdiction ................................................................ 07

II.     Venue ...................................................................... 08

III.    Parties .................................................................... 08

IV.     Allegations ................................................................ 08

V.      Causes of Actions ......................................................... 22

First Cause of Action – Declaratory and Injunctive Relief for 15 U.S.C. § 1692e .................... 22

Second Cause of Action – Declaratory and Injunctive Relief for 15 U.S.C. § 1692f ................ 23

Third Cause of Action – Statutory Violations of 15 U.S.C. § 1692k ............................. 24

Fourth Cause of Action – Rosenthal Fair Debt Collections Act ................................. 25

Fifth Cause of Action – Unfair Business Practices ......................................... 26

Sixth Cause of Action – Fraud ......................................................... 27

Seventh Cause of Action – Fraudulent Concealment & Deceit ................................. 29

Eighth Cause of Action – Damages Conspiracy to Commit Fraud .............................. 31

Ninth Cause of Action – Deprivation of Rights Under 42 U.S.C. § 1983 ......................... 32

Tenth Cause of Action – Deprivation of Rights Under Title VIII ............................... 33

Eleventh Cause of Action – Breach of Contract .......................................... 34

Twelfth Cause of Action – Emotional Distress ........................................... 35

Thirteenth Cause of Action – Negligence ............................................... 36

Fourteenth Cause of Action – Wrongful Eviction ......................................... 37

VI.     Prayer .................................................................... 39

VII.    Demand for Jury Trial ..................................................... 40

Verification .................................................................... 41

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES
ON BEHALF OF NAMED PLAINTIFFS AND OTHERS SIMILARLY-SITUATED

Plaintiffs Bamidele Hambolu, I̶b̶u̶k̶u̶n̶ ̶H̶a̶m̶b̶o̶l̶u̶ *LG*, Lynn Gavin ("the Named Plaintiffs"),

for themselves individually and on behalf of others similarly situated unnamed Plaintiffs

(collectively, "the Plaintiffs"), for their Complaint against Defendants American Utility

Management (AUM), Parkmerced Investors Properties, LLC investors and/ or its principals,

Fortress Investment Group, FCOF PM EQ, LLC, Fortress Credit Corp., Stellar Management,

Laurence Gluck, ("the Defendants") seeking declaratory and injunctive relief and statutory

damages, hereby allege on the basis of their personal knowledge and information and belief as

follows.

## NATURE OF THIS ACTION

1.     This is an action for declaratory and injuctive relief and statutory damages, having

as its foundation a pattern of wrongful conduct on the part of the Defendants, pursuant to which

hundreds, if not thousands, of Verified Complaints for Possession of Real Property have been

filed in the Superior Court of California on behalf of Defendants which contain affirmatively

false information with respect to the status of Plaintiffs' protected rights as consumers.  These

misrepresentations are intended to mislead, and/or have the effect of misleading, Plaintiff's of

Plaintiffs rights in violation of applicable provisions of the Federal Fair Debt Collection

Practices Act, 15 U.S.C. §§ 1692 *et seq*., ("FDCPA") and the U. S. Dept. of Housing and Urban

Development (HUD).

2.     An extensive investigation undertaken by the Named Plaintiffs acting on behalf of

themselves and others similarly situated reveals that the Defendant Parkmerced tenant attorneys,

with full knowledge of easily-discernible facts to the contrary, have – on hundreds of occasions

(at a minimum) – filed and to the present day continue to file Three Day Notices that violates the

provision of the FDCPA that prohibit a "debt collector" from making "false or misleading statements" or using "unfair or unconscionable means" to collect a debt.

3.     An extensive investigation undertaken by the Named Plaintiffs acting on behalf of themselves and all others similarly situated reveals the Defendant Parkmerced attorneys, with full knowledge of easily-discernible facts to the contrary, have – on hundreds of occasions (at a minimum) – filed and to the present day continue to file Complaints in the Superior Court ("SC") Housing Branch Department 501 which falsely characterize the Plaintiffs, federally subsidized housing vouchers as to which eviction and repossession is sought by the Defendants' Parkmerced attorneys, and to avoid disclosure of special defenses that must be considered in cases in which a resident of subsidized housing is subject to a claim for eviction, violates the provision of the FDCPA that prohibit a "debt collector" from making "false or misleading statements" or using "unfair or unconscionable means" to collect a debt.

4.     The Defendant American Utility Management are third party billing service, debt collectors who conduct business in the State of California. They focus on collecting consumer debt on behalf of their client Parkmerced (i.e.,) Parkmerced Investors Properties, LLC.

5.     This case concerns Parkmerced's practice of having security guards who ride Segway Hoverboard vehicles to place unsigned dunning letters (Notices) on Defendants' Parkmerced tenant attorney's letterhead.

6.     The dunning letters (Notices) are placed inside a plastic sleeve and placed onto tenants' door knob by security guards who ride on Segways.  This is a violation of the false representation or implication that any individual is an attorney or that any communication is from an attorney under 15 U.S.C. § 1692e(B)(3).

7.     Notices placed on tenants' door knob by security guards is a violation of state law that requires a pay or quit notice to be mailed or personally served on the tenant under, Cal. Civ. Proc. § 1161 *et seq.*

8.     The Named Plaintiffs allege Defendant Parkmerced are also in violation of Cal. Civ. Code § 1788.15 *et seq.*, "no debt collector shall collect or attempt to collect a consumer debt by means of judicial proceedings when the debt collector knows that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected."

9.     The Named Plaintiffs allege Defendant Parkmerced's improper service of dunning letters violate state law under Cal. Civ. Code § 1788.16 *et seq.*, "It is unlawful, with respect to attempted collection of a consumer debt, for a debt collector, creditor, or an attorney, to send a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by governmental agency or attorney when it is not. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceed six months, or by a fine not exceeding two thousand five hundred dollars ($2,500) or both."

10.     The Named Plaintiffs allege to disguise the true origin of the dunning letter, letters are printed on Defendant Parkmerced's tenant attorney's letterhead and are unsigned. Signatures on the notices are digitally affixed by Parkmerced employees before the dunning letters ("Notices") are given to the security guards to place on tenants' door knob.

11.     In the past five years Defendant Parkmerced tenant attorneys violated and continues to violate the requirements of the Rosenthal Fair Debt Collection Practices Act (RFDCPA) Cal. Civ. Code § 1788 *et seq.*, and Fair Debt Collections Practices Act ("FDCPA"),

15 U.S.C. § 1692 *et seq*., by sending Notices directly to tenants without identifying itself as a debt collector.

12.     In the past five years Defendant AUM violated and continues to violate the requirements of the Rosenthal Fair Debt Collection Practices Act (RFDCPA) Cal. Civ. Code § 1788 *et seq*.,  and Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., by sending Notices directly to tenants without identifying itself as a debt collector.

13.     Each month Defendant AUM mails billing statements that are a collection notices for (water, sewer and garbage) without identifying itself as a debt collector to residential tenants.

14.     Over 700 of these notices were issued culminating in the evictions of some tenants by the Defendant Parkmerced.  The Named Plaintiffs were wrongfully evicted from their home with a deceptive notice for usurious utility fees for (water, sewer and garbage) by the Defendants Parkmerced attorneys in a dispute over usurious utility fees.

15.     The Named Plaintiffs allege in combination and collusion Defendant Parkmerced employees intentionally designs the pay or quit letters so that they appear to come directly from the office of Defendant Parkmerced's landlord tenant attorney to avoid paying postage by having the notices delivered by security guards. This is fraud in violation of Cal. Civ. Code § 1572.

16.     Defendant Parkmerced Investors Properties, LLC landlord attorneys files these notices that are signed or unsiged with the San Francisco Rent Board.  See Exhibits 3, 4, and 7.

17.     Plaintiffs are, and at all times mentioned herein were, individuals who are citizens and residents of the State of California.

18.     Each of the Plaintiffs is a consumer within the meaning of the FDCPA, 15 U.S.C. § 1692a(5), because each allegedly accrued overdue rent for their primary residence, which is a debt for personal, family or household purposes.

19.    Each of the Plaintiffs is a consumer within the meaning of the FDCPA, 15 U.S.C. § 1692a(5), because each allegedly accrued overdue utility fees (water, sewer and garbage)  for their primary residence, which is a debt for personal, family or household purposes.

20.    Plaintiffs are informed and believes, and thereon alleges Defendants have a policy and practice of using false and misleading practices for the purposes of collecting debts.

21.    Defendants employees and agents are directed, trained and instructed to, and do, regularly employ these methods.

22.    Defendant AUM uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to owed or due another and are therefore "debt collectors" as the phrase is defined by 15 U.S.C. § 1692a(6).

# I.    **JURISDICTION**

23.    Jurisdiction of this action is vested in this Court pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. §§2201, 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367.

24.    This action arises out of Defendant's violations of the following: (i) the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.32 ("RFDCPA"); and, (ii) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§  1692-1692(p).

# II.    **VENUE**

25.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because the Defendants reside and/or transact business in this jurisdiction because Defendants do business within the State of California and the County of Los Angeles.

### III.   PARTIES

**A.**   **Named Plaintiffs**

26.   Plaintiff Bamidele Hambolu mailing address is 1920 Ocean Ave, Apt 2E, San Francisco, CA 94127.

27.   Plaintiff ~~Ibukun Hambolu~~ *L G* mailing address is 1920 Ocean Ave, Apt 2E, San Francisco, CA 94127.

28.   Plaintiff Lynn Gavin mailing address is 1920 Ocean Ave, Apt 2E, San Francisco, CA 94127.

**B.**   **Defendants**

29.   Defendant Fortress Investment Group hereinafter ("Defendant Parkmerced") **corporate address is**: Attn: Ian Schnider, Branch Manager, 10250 Constellation Blvd, Suite 1600, Los Angeles, CA 90067. Defendant is an investor in Parkmerced Investors Properties, LLC.

30.   Defendant Parkmerced Investors Properties, LLC hereinafter ("Defendant Parkmerced") is located at 3711-Nineteenth Avenue, San Francisco, CA 94132. **Agent for service is**: The Corporation Trust Company, Corporation Trust, 1209 Orange Street, Wilmington, DE 19801.

31.   Defendant Seth Mallen hereafter ("Defendant Parkmerced") **work address is** located at 3711-Nineteenth Avenue, San Francisco, CA 94132. **Agent for service is**: The Corporation Trust Company, Corporation Trust, 1209 Orange Street, Wilmington, DE 19801. Defendant is a principal and / or investor in Parkmerced Investors Properties, LLC.

32.   Defendant Bernard Polacci hereafter ("Principal") **home address is** 627 Foothill Drive, Pacifica, CA, 94044. Defendant is a principal in Parkmerced Properties, LLC.

33.     Defendant Stellar Management hereinafter ("Defendant Parkmerced") **corporate address is** 156 William Street 10th Floor, New York, NY 10105.  Defendant is an investor in Parkmerced Properties, LLC.

34.     Defendant Laurence Gluck hereinafter ("Defendant Parkmerced") **work address** is: Stellar Management corporate address is 156 William Street 10th Floor, New York, NY 10105.  Defendant Stellar Management is an investor in Parkmerced Properties, LLC.

35.     Defendant FCOF PM EQ, LLC hereinafter ("Defendant Parkmerced") **corporate address is: Attn:** Constantine M. Dakolias, 1345 Avenue of the Americas 46th Floor, New York, NY 10105.  Defendant is an investor in Parkmerced Investors Properties, LLC.

36.     Defendant Fortress Credit Corporation hereinafter ("Defendant Parkmerced") **corporate address is: Attn:** Constantine M. Dakolias, 1345 Avenue of the Americas 46th Floor, New York, NY 10105.  Defendant Fortress Credit Corporation is an investor in Parkmerced Investors Properties, LLC.

37.     Defendant Robert A. Rosania hereafter ("Defendant Parkmerced") **address is:** 575 Florida Street Suite 150, San Francisco, CA 94110.  Defendant is a ("Principal") in Parkmerced Investors Properties, LLC.

38.     Defendant American Utility Management hereinafter ("AUM") **corporate address** is located at 333 Butterfield RD 3rd Floor, Lombard, IL 60148.  **Defendant Agent for Service in the State of California is:** Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Ste 150N, Sacramento, CA 95833.  Defendant ("AUM") is a third-party utility billing service company.

39.     Defendant American Utility Management ("AUM"), focus all or a substantial portion of their billing services on the representation of commercial and residential landlords.

Defendant AUM is has a contract with Defendant Parkmerced to collect of utility fees. The billing amount for the utilities from a master meter and the amount charged is provided by Parkmerced, thus Defendant AUM is a "debt collector" within the scope and contemplation of the FDCPA, 15 U.S.C. §1692a(6).

40.     The Named Plaintiffs do not know the true names of Defendants Does 1-100 inclusive, and therefore sues them by those fictitious names.

41.     The Named Plaintiffs do not at this time know the true names or capacities of said Defendants, but pray that the same may be alleged herein when ascertained.

42.     At all times herein mentioned each Defendant was an agent, servant, or employee.

43.     Whenever referenced is made in this Complaint to any act of "Defendants" each such allegation shall mean that each defendant acted both individually and jointly with other defendants.

44.     Actions taken, or omissions made, by Defendants' employees or agents in course of their employment or agency are considered to be actions or omission of Defendants for the purposes of this Complaint.

45.     Whenever reference is made in this Complaint to any act or omission of by "Defendants" such allegation shall mean that each Defendant did or authorized or permitted the act or omission, or recklessly and carelessly failed to supervise, control or direct other persons who engaged in the act or omission.

46.     Pro se litigants' Court submissions are to be construed liberally and held to less stringent standards than submissions of lawyers.  If the court can reasonable read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with rule

requirements.  See <u>Wright v. Szczur</u> No. cv-11-140S (W.D.N.Y. Jan 28, 2012); <u>Haines v. Kerner,</u> 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L. Ed. 2d 652 (1972); <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994).

47.    This Complaint is bought on behalf of Named Plaintiffs and others similarly situated under unfair business practices Cal. Bus. Prof Code § 17200 and continuous accrual to wrongful conduct.  The ("Aryeh") decision to permit equitable exceptions to accrual under the UCL (including the discovery rule), suggest that each of the common law exceptions to the rules of accrual may apply to the UCL's statute of limitations.  The five equitable exceptions to this rule either delay the moment of accrual of toll the clock after it has already started to run:

(1)  The continuous accrual exception (which was applied in Aryeh) holds that each wrong or injury in a series triggers its own limitations period, such that only those occurring more than four years prior to the complaint are time-barred.

(2)  The equitable tolling exception extends the statute of limitations when a plaintiff pursues one of many possible remedies in good faith.

(3)  The fraudulent concealment exception extends the clock when a defendant's deceptive conduct causes the time on a claim to expire.

(4)  The continuing violation exception aggregates a series of wrongs and applies a single limitations period beginning after commission of the last wrong suffered.

(5)  The delayed discovery exception postpones accrual of the limitations period until the plaintiff discovers, or has reason to discover, the cause of action.  See <u>Aryeh v. Canon Business Solutions, Inc.</u>, No. S 184929 55 Ca. 4th 1185 (2013) (common law rule of continuous accrual applied to claim for violation of Unfair Competition Law).  See also  <u>Checo v. Shinseki</u> WL 16138885 (Fed. Cir. Apr. 23, 2014);

"The injured part may bring an action based on fraud or mistake more than than 3 years after the transaction if the party is able to show that he or she did not discover the facts, and could not with reasonable diligence have discovered them, prior to 3 years before the action. (Witkin, Cal. Proc. 5Th (2008) Plead § 929, p. 344.")

48.     The Named Plaintiffs have made numerous attempts to redress violations under the United States Constitution, federal and state laws plead the following in this Complaint:

(2)   The equitable tolling exception extends the statute of limitations when a plaintiff pursues one of many possible remedies in good faith.

(3)   The fraudulent concealment exception extends the clock when a defendant's deceptive conduct causes the time on a claim to expire.

(5)   The delayed discovery exception postpones accrual of the limitations period until the plaintiff discovers, or has reason to discover, the cause of action.

**Legal Violations**

49.     This suit is based on defective notices sent to Plaintiffs on behalf of Defendant Parkmerced tenants.  Defendant AUM is a party in the collection of usurious utility fees under a contract with Defendant Parkmerced.  Defendant AUM is attempting to collect debts on behalf of another as defined by 15 U.S.C. 1692a(6).  By so doing Defendant AUM initiates multiple legal obligations under the FDCPA, each of which Defendant AUM fails to meet.  Through their deceptive notices, Defendant AUM deprives Plaintiffs of notice of their right to dispute usurious utility fees and hampers their ability to challenge eviction proceedings that allow procedural due process and debt collection efforts.

50.     Defendant AUM uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and are therefore "debt collectors" as that phrase is defined by 15 U.S.C. § 1692a(6).

51.     The Named Plaintiffs and all others similarly situated are natural people from who a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiffs, and Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692a(3).

52.     This practice goes beyond a simple technical violation of the law.  It has real consequences culminating in the loss of housing, homelessness, ruins Plaintiffs' credit, student loans and potential employment opportunities.

53.     Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insures of that Defendant named.

## IV.     ALLEGATIONS

### A.     Usurious Utility Fees

54.     Sometime before the filing of this Complaint, Named Plaintiffs have incurred certain financial obligations to Defendant Parkmerced  who outsource their utility billing to Defendant American Utility Management (hereafter AUM).

55.     The financial obligations was primarily for personal, family or household purposes and are therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

56.     The Named Plaintiffs allege Defendant Parkmerced  violate subsidized Plaintiffs rights under 24 C.F.R. § 983.353 of the Housing Assistance Payment ("HAP") contract: The

owner may not demand or accept any rent payment from the tenant in excess of the tenant rent as determined by the PHA.  The owner must immediately return any excess payment to the tenant.  Plaintiffs allege utility fees are an illegal rent increase under 24 C.F.R. § 983.353.  See Ex 5 fees associated with AUM.

57.     The Named Plaintiffs allege Defendant Parkmerced breach Plaintiffs HUD Tenancy Addendum Section 6 Other Fees and Charges (c):  "The owner may not charge the tenant extra amounts for items customarily included in rent to owner in the locality, or provided at no additional cost to unsubsidized tenants in the premises."  Not all residents at Parkmerced pay for utility fees (water, sewer and garbage) and open space.

58.     The Named Plaintiffs allege Defendant AUM'S administration, late and/ or fees are an illegal rent increase in violation of Plaintiffs rights under HUD Tenancy Addendum Section 6 Other Fees and Charges (c).

59.     The Brooke Amendment to the United States Housing Act, 42 U.S.C. §§1437a(a), 1437(o)(2) – specifying that subsidized tenants may only pay thirty percent (30%) of their income as "rent" - prevents Parkmerced  from converting other fees to "rent." The HAP contract requires strict compliance with the rent set by the PHA.  See 24 C.F.R. § 966.4(1)(3).

60.     October 2011, Defendant AUM responds to Plaintiffs' letter past 30 days requesting an explanation of how the utility fees are calculated.  Plaintiffs allege this is a violation of Plaintiffs rights under 15 U.S.C. § 1692g.

61.     Named Plaintiffs allege Defendant AUM does not explain in the manner of the "least sophisticated consumer" can comprehend the billing methodology used by Defendants to determine amount of utility usage as defined under the FDCPA.

61.     On September 19, 2011 Named Plaintiffs receive a second Three Day Notice from Defendant Parkmerceds' tenant attorney for usurious utility fees in arrears.  The second Three Day Notice has a different amount from the first notice.  See Exhibits 3 & 4

62.     On August 24, 2011 Defendant Parkmerced has security guards riding on a Segway hoverboard to place 3-day notices contained inside a clear plastic sleeve on front door knob of Plaintiffs home in an attempt to collect the alleged debt in violation of C.C.P 1161.

63.     The Named Plaintiffs write Defendant AUM for an explanation of how utility fees are calculated.  Defendant AUM does not explain the billing used to the least sophisticated consumers-tenant would be able to comprehend the billing methodology.  See Ex 2

64.     These notices on Plaintiffs' door knob, readily viewable by the public, were intended both to be seen by other people and also to embarrass Plaintiffs.  Such conduct constitutes a violation of 15 U.S.C. § 1692d; 1692e(5); and 1692e(10).  This section of the FDCPA is incorporated into the RFDCPA through Cal. Civ. Code § 1788.12(d); thus, Defendant Parkmerced  has also violated Cal. Civ. Code § 1788.17.

65.     Defendant AUM bills Plaintiffs on a monthly basis and charges tenants more than the utility companies in the area where Plaintiffs reside.  Defendant AUM fees exceed ATM fees See Ex 6 "Cease and Desist Letter" from City Attorney Myers

66.     Defendant AUM receives its information on how much to charge Plaintiffs from Defendant Parkmerced.  Thus, Defendant AUM'S false and deceptive means utilized to collect the alleged debt from Plaintiffs constitute a violation of 15 U.S.C.§ 1692e(10).  This section of the FDCPA is incorporated into the Rosenthal Fair Debt Collection Practices Act (RFDCPA) through Cal. Civ. Code § 1788.17.  Thus Defendants violate the RFDCPA through Cal. Civ. Code § 1788.17.

67.     Defendant Parkmerced  initiate eviction proceedings against Named Plaintiffs and the manner in which the notices were given to Named Plaintiffs are unfair and unconscionable in violation of 15 U.S.C. § 1692f.  This section of the FDCPA is incorporated into the RFDCPA through Cal. Civ. Code § 1788.15(a).

68.     Defendant Parkmerced initiate eviction proceedings against Named Plaintiffs in violation of HUD Termination Notice Requirements under 24 C.F.R. § 247.4 (a-f).

**B.     <u>Improper Service of Notices</u>**

69.     The Named Plaintiffs allege Defendant Parkmerced  attempt to collect a consumer debt through a judicial proceeding from Defendant Parkmerceds' tenant attorneys notices violates Plaintiffs rights under 15 U.S.C. § 1692f unfair practices.

70.     Defendant Parkmerced attempt to collect a consumer debt through a judicial proceeding from Defendants' landlord tenant attorneys notices constitute a violation of Cal. Civ. Code Civ. § 1788.15(a): "No debt collector shall collect or attempt to collect a debt by means of judicial proceedings when the debt collector knows that service of process, where essential to the jurisdiction over the debtor or his property, has not bee legally effected.

71.     Defendant AUM'S attempt to collect a consumer debt in non disclosure of being a debt collector constitute a violation of Plaintiffs rights under  15 U.S.C. § 1692f unfair practices.

72.     Defendant Parkmerced signs a federal Housing Assistance Payment ("HAP") contract with the local Public Housing Authority ("PHA") to comply with federal, and state laws and HUD regulations.

73.     HUD regulations require that a Parkmerced comply with all of the Notice of Termination requirements under 24 C.F.R. § 247.4 (a-f).

74.     HUD regulations require that a Parkmerced provide the local ("PHA") with a notice of termination of tenancy.  Parkmerced Defendant did not provide the local ("PHA") with a tenancy notice of termination for Named Plaintiffs.  Thus Parkmerced Defendants violate subsidized Plaintiffs rights under 24 C.F.R. § 247.4(f).

75.     The California State law requires that Parkmerced's seeking to terminate a subsidized tenant's housing lease must provide the tenant with a 90-day notice of termination under Cal. Civ. Code § 1954.535.  Thus Parkmerced Defendants violate Plaintiffs rights under Cal. Civ. Code § 1954.535.

**C.     <u>Subsidized Housing</u>**

76.     Tenants living with HUD subsidized housing vouchers, the stakes in an eviction case are much higher.  By virtue of their admission into the ongoing eligibility for a subsidized housing program, public housing and voucher tenants are low-income and vulnerable, depending on the specifics of the case and the subsidy itself.  Once a housing subsidy is lost, few tenants will ever be able to regain it.  The centralized waiting list maintained by the local ("PHA") is closed with thousands of people on the wait-list.

**D.     <u>Plaintiffs are Members of a Proteced Class</u>**

77.     The Named Plaintiffs brings this action on behalf of themselves and of all other similarly situated who are subsidized and / or non-subsidized tenants.

78.     The Named Plaintiffs, represents, all others similarly situated as follows: "All persons in California who received form notifications from Defendants containing false, misleading, and deceptive statements to said persons' on door knobs and/or posted on door.

79.     Over 700 Three Day Notices have been issued by Defendant Parkmerced  for utility fees and/ or delinquent rent.

80.     The joinder of all others similarly situated is impractical and the disposition of their claims in the case will provide substantial benefits both to the parties and to the Court.

**E.     The Defendants' Pattern of Wrongful Conduct**

81.     On July 19, 2016 Plaintiff Ibukun Hambolu files a Complaint against Defendant AUM in the U.S. District Court Central District of California.

82.     On   November 2013 Plaintiff Bamidele Hambolu files complaint in U.S. District Court Central District of California.

83.     On August 16, 2012 Assistant City Attorney Amy E. Myers mails a copy of a cease and desist letter sent Defendant AUM'S client for usurious water billing fees of residents in Panama City Beach, FL.  See Ex 6

84.     On August 12, 2013 Defendant AUM settles a class action lawsuit in the U.S. District Court Central District of California case (Nekole Rucker v. American Utility Management, (#2:12-cv-09935-R-PJW).

85.     Northtown Village Limited Partnership d/b/a Northtown Apartments in Minnesota used Defendant AUM third-party billing services.  Northtown Apartments had many subsidized tenants with a Housing Choice Voucher.

86.     Northtown Village Limited Partnership d/b/a Northtown Apartments was sued by Minnesota Attorney General for violations of Minnesota unfair business practices, that pertains to master-metered residential building billing practices.

87.     On June 19, 2003 Northtown Village Apartments and the State of Minnesota entered into a Consent Judgment where Northtown was fined, and agreed to pay all of the usurious utility fees billed by Defendant AUM and to notify credit authorities and HUD stating consumers did not owe any money for utility fees.

**F.**     **HUD Termination of Tenancy Notices Regulations**

88.     HUD handbook regulations 4350 § 8-13 (b)(2)(c)(3), that are to be strictly followed for termination of tenancy in accordance with the HAP contract.

a)     Notice must state the date the tenancy is terminated;

b)     State reasons for the eviction with sufficient specificity to enable the tenant to prepare a defense;

c)     Advise the tenant that if he or she remains in the apartment on the date specified for termination, the landlord may seek to enforce the termination only by bringing a judicial action;

d)     Advise the tenant that he or she has ten days in which to discuss the proposed termination of tenancy with the landlord;

e)     Advise that persons with disabilities have the right to request reasonable accommodations to participate in the hearing process;

f)     Landlord must also comply with all state requirements;

89.     "No termination is valid unless that Parkmerced has complied with the federal notice requirements. See 24 C.F.R. § 247.3(a) (2011); Leake v. Ellicott Redevelopment Phase II, 470 F. Supp. 600,602 (W.D.N.Y. 1979); See also (finding termination notice failed to comply with the requirements); Timber Ridge v. Caldwell, 672 S.E.2d 735 (N.C. Ct. App. 2009); Fairview Co. v. Idown, 559 N.Y.S.2d 925, 928-30 (N.Y. Civil Ct 1990) (finding termination not sufficiently specific). See Exhibit 10 for notice requirements

90.     Defendant Parkmerced ' issuance of Three Day Notices culminating in the wrongful eviction of Named Plaintiffs do not comply with HUD tenancy termination requirements.

91.     Defendant Parkmerced signed the HAP contract and agreed to comply with all of HUD's regulations and federal laws to be eligible for Federal financial assistance.

92.     Defendant Parkmerceds' deficient Three Day Notices were issued to subsidized tenants who have special defenses in eviction cases.  See Ex 9 S.F. Examiner Article

93.     On December 21, 2016 in a continuum of practices Defendant Parkmerced landlord tenant attorney's actions have caused and continues to cause violation tenants rights under 15 U.S.C. § 1692(c) improper communication (unsigned notices), § 1692 (e) (notices are misleading) § 1692 (f) (notices represent unfair practices).  See Exhibits 3, 4 and 7

94.     Defendant AUM'S monthly billing statements have caused and continues to cause violations of tenants rights 15 U.S.C. § 1692 (c) improper commutation ( do not state they are from a debt collector), § 1692 (e) (monthly statements are misleading in utility billing), § 1692 (f) (monthly statements represent unfair practices).

95.     In a continuum of pattern and practices Defendants' continue to violate tenants rights who as consumers are members of a protected class under 15 U.S.C. § 1692 1692p *et seq* and Cal. Civ. Code 1788-1788.32 *et seq.*

**G.     Plaintiffs**

96.     The Named Plaintiffs seek  to represent a tenants issued Three Day Notices for the recovery of a statutory damages to the extent they have been the subject of the Defendants' unlawful conduct in violation of the 15 U.S.C. § 1692 FDCPA.

97.     Tenants are consumers of a commodity (i.e., housing) and the FDCA provides a variety of protection to consumers-tenants.

98.     Although the precise number of notices issued is over 700 it is not currently known the number of people impacted. In some instances there are roommate situations and more than one name is on the notice.  Upon information and belief, is in the hundreds, if not thousands.  The issuance of Three Day Notice is so numerous that the joinder of all individual class members is impracticable.  See Ex 8 (number of notices issued)

99.     The Named Plaintiffs' causes of action and claims for relief against the Defendants are typical of the causes of action and claims for relief of all others similarly situated. The conduct on the part of the Defendants to which the named Plaintiffs and all others similarly situated have been subjected and the relief that the Named Plaintiffs and others similarly situated seek as a result are essentially the same.  The Named Plaintiffs know of no disputes or conflicts of interest among themselves or between any of them and the others similarly situated, and the Named Plaintiffs will fairly and adequately represent and protect the interest of all others similarly situated.

100.    Questions of law and fact common to the  named Plaintiffs as a whole predominate over any questions affecting only an individual member of the others similarly situated. Named Plaintiffs representing all others similarly situated is superior to other available methods of fairly and efficiently adjudicating this controversy because, among other things this action will allow a large number of similarly-situated persons to pursue their claims simultaneously and efficiently, without the unnecessary duplication of time, effort, expense and presentation of evidence that numerous substantially similar individual actions would involve. In addition, this mechanism provides the only method by which indigent or low-income persons with comparatively small individual claims can, as a practical matter, seek redress for the wrongful acts to which they have been subjected by the Defendants as alleged herein.

101.    Defendants, under color of statue, ordinance, regulation, custom, and/or usage, have subjected, or have caused to be subjected, Plaintiffs to the deprivation of rights, privileges, or immunities secured by the Constitution and laws – especially rights to due process – and therefore Defendants are liable to Plaintiffs pursuant to 42 U.S.C. section 1983.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(For Declaratory and Injunctive Relief
With Respect To Violations of 15 U.S.C. § 1692e)

102.    The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

103.    Defendant Parkmerced  tenant attorneys issues Three Day Notices to pay or quit on behalf of Defendant Parkmerced against Named Plaintiffs and other similarly situated, seeking the repossession of rental properties and the recovery of consumer debt consisting of usurious utility fees (water, sewer and garbage) and/or back rent allegedly due and owing.

104.    In bringing these actions, the Defendant Parkmerced  attorneys are acting as "debt collectors" subject to the provisions and prohibition of the FDCPA.  *See* 15 U.S.C. § 1692a(6).

105.    The Named Plaintiffs were subsidized tenants and had special protections against eviction procedures under federal regulations that must be strictly followed. See para 88 page 19.

106.    Defendant Parkmerced ' tenant attorneys nondisclosure of Named Plaintiffs subsidy status of the rental unit is a false statement and violates 15 U.S.C. § 1692e, e(10), which provides that "[a] debt collector may not use any false, deceptive or misleading statements in connection with the collection of any debt."

107.    Defendant AUM nondisclosure of being a debt collector on behalf of their client Defendant Parkmerced Investors Properties, LLC is a false statement and violates 15 U.S.C. §

1692e, e(10), which provides that "[a] debt collector may not use any false, deceptive or misleading statements in connection with the collection of any debt."

WHEREFORE, the Defendants should be immediately enjoined during the pendency of this action, and permanently enjoined, upon the final resolution of this action in Plaintiffs' favor, from misrepresenting the subsidy status of tenants' subsidized rental housing in such written submissions filed in Superior Court should state status of subsidized tenants and violation of consumers rights.

<u>**SECOND CAUSE OF ACTION**</u>
(For Declaratory and Injunctive Relief
With Respect To Violation of 15 U.S.C. § 1692f)

108.    The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

109.    Defendants have filed hundreds of Three Day Notices to pay or quit, against Named Plaintiffs and others similarly situated, for recovery of consumer debt consisting of usurious utility fees for (water, sewer and garbage) and/or back rent.  See Ex  8

110.    In bringing these actions, the Defendants are action as "debt collectors" subject to the provisions and prohibitions of the FDCPA.  *See* 15 U.S.C. § 1692a(6).

111.    Defendant Parkmerced's nondisclosure concerning the subsidy status of Named Plaintiffs and all others similarly situated continues violate under 15 U.S.C. § 1692f, which provides that "[a] debt collector my not use unfair or unconscionable means to collect or attempt to collect any debt."  See Ex 3, 4, and 7

WHEREFORE, the Defendants should be immediately enjoined, during the pendency of this action, and permanently, enjoined, upon the final resolution of this action in Plaintiffs' favor, from misrepresenting the subsidy statue of tenants and violation of consumer rights.

### THIRD CAUSE OF ACTION
(For an Award of Statutory Damages for
Violation of the Provisions of the FDCPA)

112.     The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

113.     Defendants in combination and collusion with noncompliance with the FDCPA was intentional within the meaning of 15 U.S.C. § 1692k as Defendants intended to and did in fact mail the defective Notices to Plaintiffs.

[A] any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of ...

      (1)     any actual damages sustained by such person as a result of such failure;

      (2)(A)  in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

      (B)     in case of the class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and

            (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to

            exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

      (3)     in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fees as determined by the court.

WHEREFORE, upon the final resolution of this action in Plaintiffs favor, establishing that the Defendants violated 15 U.S.C. § 1692e, 15 U.S.C. § 1692f, or both, the Plaintiffs shall be

entitled to a recovery of the statutory damages described in 15 U.S.C. § 1692k(a), as set forth above.

## FOURTH CAUSE OF ACTION
### (Violation of the Rosenthal Fair Debt Collection Practices Act)
### (RFDCPA: Cal. Civ. Code §§ 1788-1788.32 *et seq*)
### By All Defendants

114.    The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

115.    The foregoing acts and omissions constitute numerous and multiple violations of the RFDCPA.

116.    As result of each and every violation of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for knowing or willful violation in the amount up to $1,000 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to § 1788.30(c).

117.    The Named Plaintiffs allege Defendants attempt to collect alleged debt through termination notice in violation of HUD Notice Requirements culminating in eviction violates Plaintiffs rights as  a unconscionable means to collect a debt under Cal. Civ. Code § 1788.10 (f.).

118.    The Named Plaintiffs allege Defendants attempt to collect alleged debt through improper service of notices in violation of Cal. Civ. Code § 1788.12(d).

119.    The Named Plaintiffs allege Defendants attempts to collect debt when service of process was defective violates Plaintiffs rights under of Cal. Civ. Code § 1788.15(a)  from each Defendant individually.

## FIFTH CAUSE OF ACTION
### (Unfair Competition Law: Cal. Bus Prof Code § 17200 *et seq.*)
### (All Defendants)

120.     The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

121.     Pursuant to Business and Profession Code Section 17203, that defendants, their successors, agents, representatives, employees, and all persons action in concert or in participation with defendants, be permanently enjoined from engaging in unfair competition as defined in Business & Professions Code Section 17200, including, but not limited to, the acts and practices alleged in this Complaint.

122.     Defendant Parkmerced's issuance of the Three Day Notices to Named Plaintiffs and other similarly situated tenants subsidized statues constitute unlawful, fraudulent and/ or unfair practices that Plaintiffs had 30 days to dispute alleged debt under 15 U.S.C. § 1692g(a)(3).

123.     Pursuant to Defendant Parkmerced nondisclosure of Named Plaintiffs and other members similarly situated tenants subsidized housing vouchers status constitute unlawful, unfair, and/or fraudulent business practices and, thus, unfair competition under Business and Professions Code § 17200.

124.     Pursuant to Defendant AUM'S nondisclosure of attempting to collect the allege debt on behalf of their client Defendant Parkmerced Investors Properties, LLC constitute unlawful, unfair, and/ or fraudulent business practices and, thus, unfair competition under Business and Professions Code § 17200.

WHEREFORE, the People pray for the following relief;

## SIXTH CAUSE OF ACTION
### (Fraud: Cal. Civ. Code § 1572 *et seq.*)

### (Against All Defendants)

125.    The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

126.    Defendant Parkmerceds' Three Day Notices are fraudulent and deceitful in that the least sophisticated person can not comprehend the billing methodology used under 15 U.S.C. § 1692g(a)(3).

127.    Plaintiffs allege Defendant Parkmerced violates Plaintiffs rights under HUD Tenancy Addendum Section 8(g) Owner Notice of Grounds (2): "The owner must give the PHA a copy of any owner eviction notice at the same time the owner notifies the tenant." ("fraudulent concealment")

128.    Plaintiffs allege Defendant Parkmerced failure to provide a copy of the notice to the PHA is grounds for dismissal of the eviction suit.  See Lamlon Develop. Corp. v. Owens, 533 N.Y.S.2d 186, 189-191 (N.Y. Dist. Ct. 1988); Santouse v. Scott, HDSP137470, 2006 Conn. Super. LEXIS 1660 (Conn. Super. Ct. June 2, 2006) because the PHA is not involved in the eviction procedure, no state or government action is present.  See Owner Termination of Tenancy 24 C.F.R. § 982.310 (2)(e)(2)(ii)(2011)[1].

129.    Plaintiffs allege Defendant Parkmerced Three Day Notices are in violation of Federal law and HUD handbook regulations 4350 § 8-13 (b)(2)(c)(3), that are to be strictly followed for termination of tenancy.  See Exhibits 3, 4 and 7

HUD Termination Notice Requirements:

---

[1]   24 C.F.R. § 982.310 (2)(e)(2)(ii) Owner Termination of Tenancy: The owner must give the PHA a copy of any eviction notice given to the tenant.

a)       Notice must state the date the tenancy is terminated;

b)       State reasons for the eviction with sufficient specificity to enable the tenant to prepare a defense;

c)       Advise the tenant that if he or she remains in the apartment on the date specified for termination, the landlord may seek to enforce the termination only by bringing a judicial action;

d)       Advise the tenant that he or she has ten days in which to discuss the proposed termination of tenancy with the landlord;

e)       Advise that persons with disabilities have the right to request reasonable accommodations to participate in the hearing process;

f)       Landlord must also comply with all state requirements;

130.     "No termination is valid unless that landlord has complied with the federal notice requirements. See 24 C.F.R. § 247.3(a) (2011); Leake v. Elliott Redevelopment Phase II, 470 F. Supp. 600,602 (W.D.N.Y. 1979); (finding termination notice failed to comply with the requirements); Timber Ridge v. Caldwell, 672 S.E.2d 735 (N.C. ct. App. 2009); Fairview Co. v. Idown, 559 N.Y.S.2d 925, 928-30 (N.Y. Civil Ct 1990) (finding termination not sufficiently specific).

131.     Defendant Parkmerced's unlawful, unfair and fraudulent business act or practice included a pattern of violations under 24 C.F.R. § 247.4 (a-f).  Defendant Landlords failed to comply with HUD Requisites of Termination Notice that are to be strictly followed under  the Housing Assistance Payment (HAP) contract signed by Defendant Parkmerced.

132.     Defendant Parkmerced's unlawful, unfair and fraudulent business act or practice includes a pattern of violations under state law, Cal. Civ. Code § 1954.535.  Defendant Parkmerced failed to comply with California state law that requires subsidized tenants are given a 90-Day Notice of tenancy termination when the landlord is seeking to terminate the subsidized

contract with the government.  Defendant Parkmerceds' 3-Day notices are in violation of California State law § 1954.535.

133.    As a direct and proximate result of Defendant Parkmerced's unlawful conduct described, the Named Plaintiffs have suffered actual injury and economic loss in the form of all of Plaintiffs personal property, subsidized Housing Choice Voucher and a rent control unit in the City and County of San Francisco.

134.    Plaintiffs request the Court order that Defendant Parkmerced Investors Properties, LLC., be required to disgorge all profits they have wrongfully obtained through the use of these unlawful practices, and provide restitution.

WHEREFORE, Plaintiffs pray judgment as set forth below.

## SEVENTH CAUSE OF ACTION
(Damages for Fraudulent Concealment and Deceit: Cal. Civ. Code § 1572(5))
(Against All Defendants )

135.    The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

**A.    Defendants had a duty to disclose material facts to Plaintiffs**

136.     Defendant Parkmerced had a duty to disclose to Plaintiffs were entitled to procedural due process rights in accordance to the HAP contract under 24 C.F.R. § 247.4(a-f) prior to any judicial action filed in court. The Named Plaintiffs allege Defendants intentionally concealed true facts with intent to defraud Plaintiffs if there is no compliance with federal regulations.

137.    Plaintiffs allege Defendant Parkmerced knew that its representations at the time of judicial filing of Plaintiffs unlawful detainer action were false.

**B.    Defendants conceal material facts**

138.     Plaintiffs allege Defendant AUM conceal the fact Defendant AUM is a debt collector.

139.     Defendant AUM conceal the facts Plaintiffs had 30-days to dispute usurious utility fees under 15 U.S.C. § 1692g(a)(3) of the Fair Debt Collections Practices Act.

**140.**     The Defendants intentionally concealed the facts and information from Plaintiffs about consumer rights under the Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq.

**C.**     Plaintiffs allege Defendant AUM  intentionally concealed true facts with intent to defraud Plaintiffs of their rights under the 1692e FDCPA.

141.     The Named Plaintiffs allege all Defendants intended to induce reliance on the part of each Plaintiff on representations Defendants legal actions from the perspective of the "least sophisticated consumer," pertaining to the validity of the debt from the 3-day notices under 15 U.S.C. § 1692g(a)(3).

142.     The Named Plaintiffs allege Defendants intentionally concealed true facts with intent to defraud Plaintiffs if there is no compliance with federal regulations.

143.     Defendant Parkmerced did not disclose to the Named Plaintiffs their townhome apartment would be demolished pending approval of Defendant's development agreement.

144.     Said Defendants, and each of them, had knowledge of the true facts as set forth above and deliberately concealed and failed to disclose said facts to Plaintiffs.

145.     The Named Plaintiffs were unaware of the facts and would have acted if the facts were disclosed about Plaintiffs rights under the Fourteenth Amendment to the U.S. Constitution.

146.     Plaintiffs have been damaged as a result of concealment in a wrongful eviction by all Defendants actions.

147.     Defendants had knowledge of the true facts. The intentional misrepresentations

described above were made by all Defendants with the intent to violate Plaintiffs due process rights and to take other acts described herein, ultimately causing the eviction of Plaintiffs from their home.

148.    Plaintiffs, at the time of Defendants' misrepresentations and failure to disclose the true facts, and at the time Plaintiffs took the actions alleged herein, were ignorant of the existence of those facts that said Defendants, and each of them, suppressed and failed to disclose.

149.    Had Plaintiffs known the true facts, they would have attempted to advocate for Plaintiffs constitutional rights.  Plaintiffs' reliance was justified in that Plaintiffs are lay people who were misled by false misrepresentations and even after reasonable inquiry did not have knowledge of those facts that were suppressed.

150.    As a proximate result of the misrepresentations and the failure to disclose the true facts, Plaintiffs have been damaged in that through evictions they loss Named Plaintiffs personal property, Housing Choice Voucher, rent controlled housing harm reported on credit report.  The exact amount by which Plaintiffs and all others similarly situated have been damaged is unknown at this time, but it is at least the difference between what Plaintiffs paid for the units and its true value, or other damages, according to proof at trial.

## EIGHTH CAUSE OF ACTION
### (Damages for Conspiracy to Commit Fraud by Concealment and Deceit)

151.    The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

152.    Plaintiffs alleges Defendant Parkmerced  non disclosure that all Plaintiff's pay a percentage of non paying residents at Parkmerced utility fees is fraudulent concealment.

153.    Defendant Parkmerced did not disclose to Plaintiffs that pending a development agreement that was submitted to S.F. Planning Department, Plaintiffs townhome apartment would be demolished.

154.    The California Supreme Court has stated, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil conspiracy, a co-conspirator effectively adopts as his or her own the torts of other co-conspirators within the ambit of the conspiracy.

155.    Defendants used the Superior Court to file unlawful detainers due to the expeditious action of cases that move very quickly through the courts as if on a assembly line to deprive Plaintiffs of their rights.

## NINTH CAUSE OF ACTION
### (Deprivation of Civil Rights: 42 U.S.C. § 1983 [8,14])

156.    The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

157.    Recipients of the 3-day notices are consumers-tenants and are members of a protected class.

158.    Named Plaintiffs allege Defendant Parkmerced's wrongful eviction of Named Plaintiffs from their home and others similarly situated evicted over usurious utility fees in violation of ("HUD") tenancy termination notices violates Plaintiffs rights under the Eighth Amendment to the U.S. Constitution.  Plaintiff Gavin is disabled and a member of a protected class under the American with Disabilities Act.

159.    Named Plaintiffs alleged Defendant Parkmerceds' wrongful eviction of Named Plaintiffs from their home and others similarly situated evicted over usurious utility fees in

violation of ("HUD") tenancy termination notices violates the Fourteenth Amendment to the U.S. Constitution. Under ("HUD") regulations no termination is valid unless the landlord has complied with the federal notices requirements.  See  e.g., <u>Leake v. Ellicott Redevelopment Phase II</u>, supra note 26, 470 F. Supp. At 602 (finding termination notice failed to comply with the requirements of 24 C.F.R. Part 450, the predecessor of Part 247); <u>Riverview Towers Associates v. Jones</u>, 817 A.2d 324 (N.J. Super. Ct. App Div. 2003) (landlord must comply with HUD lease termination notice requirements); <u>Lincoln Terrace Associates, Ltd., v. Kelly</u>, 635 S.E.2d 434, 438 (N.C. Ct. App. 2006) (subsidized landlord failed to prove that notice of termination complied with lease requirements); <u>Hedco v. Blachette</u>, 763 A. 2d 639 (R.I. 2000) (notice of proposed termination that failed to specify the termination date of the lease but that merely stated unless you make payment of all rent in (10) days of the date that this Notices was mailed to you, your tenancy will be terminated and an eviction notice may be initiated in court against you on or after June 29, 1998," does not comply with the requirement of 24 C.F.R. § 247.4(a)(1), which requires a specific termination date for a federally subsidized tenancy).

## TENTH CAUSE OF ACTION
### (Deprivation of Rights Under Title VIII of the 1968 Civil Rights Act)

160.    The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

161.    The Named Plaintiffs allege Defendant Parkmerced's issuance of Three Day Notices for usurious utility fees targets subsidized tenants who are people of Color, low-income and / or disabled tenants and disabled veterans on a fixed income in violation of  Title VIII of the 1968 Civil Rights Act. See Ex   SF Examiner

162.    Plaintiffs allege Defendant Parkmerced discriminated against Plaintiffs based on race and  that they are subsidized tenants in violation of Title VIII of the 1968 Civil Rights Act.

163.    Defendant Parkmerceds' Development Agreement will demolition of 1,538 townhome apartments.  Defendant Parkmerced plans to build over five thousand high end luxury condos to replace the townhome apartments.

164.    Parkmerced apartment complex is located in a residential district where there is a history of discrimination against people of Color.  Parkmerced was the defendant of a housing discrimination case that went before the U.S. Supreme Court.  The U.S. Supreme Court upheld Title VIII of the 1968 Civil Rights Act that made housing discrimination illegal in San Francisco, CA.  See Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205 (1972).

## ELEVENTH CAUSE OF ACTION
(Breach of Contract)

165.    The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

166.    Defendant Parkmerced Investors Properties, LLC, signed a Housing Assistance Payment ("HAP") contract to comply with all of ("HUD's") regulations, federal, and state laws and local ordinances.

167.    The Named Plaintiffs allege Defendant Parkmerced violate subsidized Plaintiffs rights under 24 C.F.R. § 983.353 of the ("HAP") contract: The owner may not demand or accept any rent payment from the tenant in excess of the tenant rent as determined by the PHA.  The owner must immediately return any excess payment to the tenant.  Plaintiffs allege utility fees are an illegal rent increase under 24 C.F.R. § 983.353.

168.    Plaintiffs allege Defendant Parkmerced breach Plaintiffs HUD Tenancy Addendum Section 6 Other Fees and Charges (c): "The owner may not charge the tenant extra amounts for items customarily included in rent to owner in the locality, or provided at no

additional cost to unsubsidized tenants in the premises." Plaintiffs allege utility fees are an illegal rent increase.

169.   Named Plaintiffs allege Defendant AUM activation fees, late fees and/ or all fees billed to Plaintiffs on behalf of their client Defendant Parkmerced is a breach of Plaintiffs subsidized contract under the ("HAP") contract and are illegal rent increases.

170.   Plaintiffs alleges Defendant Parkmerced non disclosure that Defendant AUM is bills for usurious utility fees in the rental lease is fraudulent concealment.

171.   Plaintiffs allege Defendant Parkmerced non-compliance with HUD regulations is fraudulent conveyance of federal funds.

172.   Plaintiffs allege Defendant AUM non disclosure of being a debt collector is fraudulent concealment and voids a contract.

## TWELFTH CAUSE OF ACTION
### (Emotional Distress)

173.   The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

174.   The Named Plaintiffs continue to experience emotional distress by and through all Defendants actions under 15 U.S.C. § 1692k(a)(1).  See McNally v. Client Services, 2008 U.S. Dist. LEXIS 66845 (W.D. Pa. 2008).  See Ex S.F. Examiner

175.   Named Plaintiffs allege all Defendants' cause Plaintiffs emotional distress as low-income Plaintiffs were wrongfully evicted onto the streets with only the clothes on their back.

176.   Plaintiff Gavin was evicted onto the street with only pajamas to wear from the hospital.  Plaintiff Gavin is disabled with multiple disabilities and a member of a protected class under the American with Disabilities Act.

177.    A disabled veteran told Plaintiff Gavin they were homeless or 10 years and if evicted over usurious utility fees the would commit suicide.

### THIRTEENTH CAUSE OF ACTION
(Negligence: Cal. Civ. Code § 3294 et seq.)

178.    The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

179.    The named Plaintiffs allege all Defendants' actions perpetuate fraud is deliberate and egregious, revealing oppression, malice, or was taken in conscious disregard of the rights, health, safety, and economic condition of Plaintiffs as defined in Civil Code Section 3294 entitling Plaintiffs to an award of exemplary and punitive damages.

180.    The aforementioned action resultants harms were directly and proximately caused by iter alia, omission, strict liability, fault, negligence, breach and violation by Defendants and/or their agents, staff, or other representatives, in regard to HUD regulations, federal and state laws and city ordinances.

181.    The aforementioned action resultants harms were directly and proximately caused by iter alia, omission, strict liability, fault, negligence, breach and violation by Defendants and/or their agents, staff, or other representatives, in regard to FDCPA and RFDCPA.

182.    All Defendants under color of statute, ordinance regulation, custom, and/or usage, have subjected, or have caused, to be subjected, Named Plaintiffs to the deprivation of rights, privileges, or immunities secured by the United States Constitution, especially rights to due process – and therefore Defendants are liable to Named Plaintiffs and all others similarly situated pursuant to 42 U.S.C. section 1983.

183.    Plaintiff Gavin is disable with multiple disabilities and a member of a protected class under the American with Disabilities Act.

## FOURTEENTH CAUSE OF ACTION
(Wrongful Eviction)

184. The Named Plaintiffs reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

185. Plaintiffs allege Defendants deprivation of Plaintiffs rights under the HUD Termination Tenancy Notice requirements  24 C.F.R. § 247.4 (a-f) culminates in the wrongful eviction of Plaintiffs and all others similarly situated from their home.

186. Defendants do not follow the HUD Termination Tenancy Notice requirements in under the Housing Assistance Payment ("HAP") contract that must be strictly followed under 24 C.F.R. § 247.6(c) ("A tenant may rely on State or local law governing eviction procedures where such law provides the tenant procedural rights which are in addition to those provided by this subpart, except where such State or local law has been preempted ...") See Kennedy v. Andover Place Apartments, 203 S.W.3d 495, 498 (Tex. App. - Houston [14th Dist. ] 2006, no pet.)

187. Under HUD Housing Assistance Payment contract  no termination is valid unless the landlord has complied with the federal notice requirements.  See 24 C.F.R. § 247.3(a) (2011); Stewart v. Tacoma Rescue Mission, 228 P.3d 1289 (Wash. Ct. app 2010(reversing judgment of eviction because the termination notice did not adequately identify "threatening and intimidation behavior); Timber Ridge v. Caldwell, 672 S.E.2d 735 (N.C. Ct. App. 2009).

188. Plaintiffs allege Defendants deprivation of Plaintiffs rights under 15 U.S.C. § 1692 et seq Fair Debt Collection Practices Act culminates in the wrongful eviction of Plaintiffs from Plaintiffs home.  See Romea v. Heiberger & Associates, 163 F.3d 111 (2d Cir. 1998); See Hodges v. Sasil Corp., 189 N.J. 210, 915 A.2d 896 (civ. Ct. 1998); Eina Realty v. Calixte, 178 Misc. 2d 80, 679 N.Y. S.2d 796 (Civ. Ct. 1998).

189.     The Named Plaintiffs were recipients of a subsidized voucher through the HUD Housing Choice Voucher Program.  Under 24 C.F.R. § 247.4 (f) <u>Failure of a Tenant to Object</u>: The failure of a tenant to object to the termination notice shall not constitute a waiver of his rights to thereafter contest the landlord's action in any judicial proceeding.

190.     The named Plaintiffs allege Defendants' actions perpetuate fraud is deliberate and egregious, revealing oppression, malice, or was taken in conscious disregard of the rights, health, safety, and economic condition of Plaintiffs as defined in Civil Code Section 3294 entitling Plaintiffs to an award of exemplary and punitive damages.

191.     The aforementioned action resultants harms were directly and proximately caused by iter alia, omission, strict liability, fault, negligence, breach and violation by Defendants and/or their agents, staff, or other representatives, in regard to HUD regulations, federal and state laws and city ordinances.

192.     All Defendants under color of statute, ordinance regulation, custom, and/or usage, have subjected, or have caused, to be subjected, named Plaintiffs to the deprivation of rights, privileges, or immunities secured by the United States Constitution, especially rights to due process – and therefore Defendants are liable to named Plaintiffs pursuant to 42 U.S.C. section 1983.

193.     Courts have ruled rent in arrears are a debt since rental payments come under the statue definition of an obligation arising out of a transaction involving "personal, family, or household purposes."  Tenants are consumers of a commodity (i.e., housing) and the FDCA provides a variety of protection to consumers-tenants.

194.     Plaintiff Gavin is disable with multiple disabilities and a member of a protected class under the American with Disabilities Act.

## VI.   **PRAYER**

WHEREFORE, Plaintiffs respectfully prays that this Court provide the following relief:

1.       To issue a  preliminarily and/or permanently injunction against the Parkmerced Development Agreement to be sent back to S.F. Planning Department prior to the vote on approval of the project.  Over 700 people have been issued Three Day Notices in violation of the Fair Debt Collection Practices Act.  Consumers-tenants are members of a protected class.

2.       To issue a restraining order under 18 U.S.C. § 1345(B)(i): prohibit any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent value; and bank accounts;

3.       Issue a judgment preliminarily and/or permanently enjoining the Defendants from continuing to misrepresent the subsidy status of tenants' rental housing in written submissions filed on behalf of their landlord clients in actions initiated or pending in SFSC;

4.       Injunctive relief in the form of an order requiring Defendant to disgorge all ill-gotten gains and awarding Plaintiffs and other similarly-situated full restitution of all monies wrongfully acquired by Defendant by means of such unfair and unlawful conduct;

5.       Award the Plaintiffs and all others similarly-situated statutory damages of $1,000 in accordance with the provisions of 15 U.S.C. § 1692k(a)(2)(B);

6.       Award the Plaintiffs their litigation costs and reasonable attorneys' fees incurred in this action in accordance with the provisions of 15 U.S.C. § 1692k(a)(3), against each named Defendant individually;

7.       Award the Plaintiffs and all others similarly-situated statutory damages of $1,000 in accordance with the provisions of Cal. Civ. Code § 1788.30(b);

8.       For compensatory damages;

9.      For punitive damages;

10.     For treble damages;

11.     For the Court to aside an award for other persons similarly situated according to their damages;

12.     For cost of medical bills;

13.     For cost of suit;

14.     Reasonable attorney's fees;

15.     For prejudgment interest at the legal rate;

16.     For prejudgment interest and post judgment according to proof; and

17.     Grant the Plaintiffs all such other and further relief as this Court may deem necessary and/or appropriate in the interest of justice.

Respectfully submitted,

Dated:  January 23, 2017

by:  _Bamidele Hambolu_

by:  _Lynn Gavin_

## VII.   **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a jury trial on all issues raised in this Complaint.

I declare under penalty of perjury under the laws of the State of California and the united States that the foregoing is true and correct.

Dated:  January 23, 2017

Respectfully submitted,

by  _Bamidele Hambolu_

by  _Lynn Gavin_

Pro Se Litigant

## **VERIFICATION**

I, <u>BAMIDELE HAMBOLU</u>, Plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief.  See the Supremacy Clause in the Constitution for the United States of America, as lawfully amended (hereinafter "U.S. Constitution").

Dated:  January 23, 2017                     Respectfully submitted

by  _Bamidele Hambolu_

by  _Lipen Harkin_

Pro Se Litigants

# EXHIBIT 1

PARKMERCED LEASE

Parkmerced

# RESIDENTIAL TENANCY AGREEMENT

| | |
|---|---:|
| Security Deposit: | **$0.00** |
| Rent Due Upon Move-In: | **$2,293.00** |
| For the Period: | **3/1/2010** to **3/31/2010** |
| Application Fee: | **$40.00** |
| Other: | **$0.00** |
| **TOTAL CHARGES:** | **$2,333.00** |

1. **INTRODUCTION:**   **Parkmerced Investors Properties, LLC dba Parkmerced** ("OWNER") rents to **Hambolu, Lynn** ("LESSEE"), and Lessee hires **22 Grijalva Drive , San Francisco, CA 94132 (24040)** (the "PREMISES"). No other portion of the building wherein the Premises is located is included unless expressly provided for in this Agreement.

2. **TERM:**   The term of this rental shall begin on **March 1, 2010** and end on **February 28, 2011**. Lessee must, upon termination of the initial term of this lease, execute a written extension or renewal of the lease term for a new term of like duration. All lease covenants will apply for the new term, except that the monthly base rent may, at Owner's discretion, be increased as allowed by local and/or state law. If the lease term is for a period of time over one year, the landlord reserves the right to impose annual allowable rental increases as allowed by law, as well as any other rental increase permitted by state and local regulation. Such increases shall be noticed pursuant to Civil Code Section 827. Failure to execute a lease extension or renewal after written demand to do so may cause the tenancy to terminate pursuant to Section 37.9(a)(5) of the San Francisco Residential Rent Stabilization and Arbitration Ordinance.

3. **PHYSICAL POSSESSION:**   If Owner is unable to deliver possession of the Premises at the commencement of the term, Owner shall not be liable for any damage caused thereby, nor shall this Agreement be void or voidable, but Lessee shall not be liable for any rent until possession is delivered. Should the Premises not be available for Lessee to take possession at the commencement of the Term specified herein, Owner reserves the right to substitute the Premises with an equivalent size or larger size Premises ("Substituted Premises") at the same monthly rental rate specified herein. Lessee agrees that upon delivery of the Substituted Premises at the commencement of the Term, Lessee shall be bound to all covenants and conditions contained herein.

4. **RENT:**   The initial monthly base rent for the Premises shall be **$2,293.00**. All rent is due and payable in advance on the **first** day of each and every month (the "Due Date") without offsets, deductions or credits. In the event of roommates, or another form of multiple tenancy, Lessee understands and agrees that rent shall be paid with a single payment and that it is up to Lessee to collect individual checks independently in order to submit a combined, single payment. All rent shall be paid to **Parkmerced Investors Properties, LLC dba Parkmerced** or such other person, as Owner shall designate in writing. Lessee agrees always to pay rent by personal check or cashier's check and not use cash or money order. Owner will accept rent payments only from the actual lessees, and no third party checks will be accepted. Rent shall be paid to Owner at the following address: **3711 19th Avenue, San Francisco, CA  94132** or at such other place designated by Owner. Any other sums, which may become due from Lessee from time to time, shall be considered rent and will be due on the Due Date. Lessee bears the risk of loss or delay of any payment made by mail. Owner must receive mailed rent payments on or before the Due Date. Rent for any partial month shall be pro-rated at the rate of 1/30th of the monthly rent per day. Owner may apply any payment made by Lessee to any obligation of Lessee to Owner notwithstanding any dates or other direction from Lessee that accompanies any such payment. Any attempt by Lessee to allocate a payment in any other way shall be null and void.

   Initials: _____

5. **SECURITY DEPOSIT:**   **Before the commencement of the term,** Lessee shall pay a Security Deposit of **$0.00**, (the "Security Deposit") for the purposes set forth in Civil Code Section 1950.5. No trust relationship between Owner and Lessee is created because of the Security Deposit and Owner may commingle the Security Deposit with other funds of Owner. Owner may retain such amounts of the Security Deposit as allowed by law including, but not limited to, Lessee's obligation to restore, replace or return personal property. Owner shall, within the time period allotted by law, refund any balance after such deductions to Lessee after Lessee has vacated the Premises. Lessee shall not be deemed to have vacated the Premises for purposes of this paragraph until: a) Lessee returns to Owner ALL keys to the Premises; and b) Lessee has surrendered the Premises to Owner free and empty of all persons claiming any right to possess the Premises. Any balance of the Security Deposit and an accounting of any deductions therefrom will be mailed to Lessee at the Premises unless Lessee provides, in writing to Owner, a mailing address to which the balance, if any, of the Security Deposit and the accounting should be sent. Owner's check or other draft refunding any balance of the Security Deposit may be made in the name of all original lessees regardless of the party who in fact made the deposit and regardless of the identity of the persons then occupying the Premises. Lessee may NOT apply the Security Deposit, nor any portion thereof, to the last month's rent. If any portion of the Security Deposit is applied by Owner to any obligations of Lessee at any time during the tenancy Lessee must, upon 5 days written notice, reinstate the Security Deposit to its full original amount.

   So long as any law so requires, commencing with the date Owner received the Security Deposit, Owner shall pay to

Initials _____



Parkmerced

Lessee simple interest as directed by such law on the amount held as a Security Deposit provided this tenancy does not terminate before the Security Deposit has been held for one year. Said payment of interest shall be made once a year commencing with the date the Security Deposit has been held for a year. Upon Lessee's surrender of the Premises, if the Security Deposit is insufficient to remedy Lessee's default in rent, to repair damages caused by Lessee and to clean the Premises, Owner may use from the accrued unpaid interest such amounts as are necessary for those purposes. Accrued unpaid interest or balance thereof, if any, shall be mailed to Lessee at last known address in the same manner as any refund of the Security Deposit.

6. **LATE PAYMENTS:**   Lessee and Owner agree that Owner will sustain costs and damage as a result of any late payment of rent but that it will be extremely difficult to determine with specificity the actual amount of that damage. Therefore, Lessee agrees to pay, as additional rent, a late charge equal to **$75.00** for any payment of rent not received by Owner within **five** calendar days of the Due Date. The parties agree that this late charge represents a fair and reasonable estimate of the costs and damages that Owner will incur by reason of late payment by Lessee. The provision for payment of a late charge does not constitute a grace period and Owner may serve a 3-Day Notice to Pay Rent or Quit on the day after the Due Date. Owner and Lessee agree that Lessee paying rent **five** days after the Due Date on three separate occasions within any twelve month period shall constitute habitual late payment of rent and may be considered a just cause for eviction.

Lessee(s) Initials: ___L.H.___

7. **RETURNED CHECKS:**   Lessee and Owner agree that Owner will sustain costs and damage as a result of a check which is not honored by the bank on which it is drawn for any reason, but that it will be impracticable or extremely difficult to fix the actual damage. Therefore, the following sum represents a reasonable and fair estimate by Owner and Lessee of the actual damage that would be sustained. Lessee agrees to pay to Owner the additional sum of US **$50.00** as a reimbursement of the expenses incurred by Owner. A dishonored check shall constitute late payment of rent and shall be subject to the provisions of Paragraph 6 above regarding late payment, including but not limited to habitual late payment of rent. Such charges shall be immediately due and payable upon notice to Lessee. Failure to immediately pay the charges shall constitute a default under the terms of this Agreement. If Lessee gives Lessor two checks that are returned for nonpayment during the term of this Lease, then the future rent shall be payable by certified cashier's check. This policy will be applicable throughout the balance of either the initial term or any renewal or extension thereof.

Lessee(s) Initials: ___L.H.___

8. **FAILURE TO PAY:**   Pursuant to Civil Code Section 1785.26, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations, such as your financial obligations under the terms of this Agreement.

9. **INDIVIDUAL LIABILITY:**   Each person who signs this agreement, whether or not said person is or remains in possession, shall be jointly and severally responsible for the full performance of each and every obligation of this agreement, including, but not limited to, the payment of all rent due and the payment of costs to remedy damages to the Premises regardless of whether such damages were caused by a lessee or invitee of Lessee

Lessee(s) Initials: ___L.H.___

10. **USE/OCCUPANCY:**   The Premises shall be used as a permanent, full-time dwelling for residential purposes only and for no other reason. Lessee named in Paragraph 1 of this Agreement and no others is the only original occupant who took possession of the Premises pursuant to this Agreement. Lessee may have guests on the Premises for not over fifteen (15) consecutive days or thirty (30) days in a calendar year, and no more than one (1) guest at any one time. Persons staying more than fifteen (15) consecutive days or more than thirty (30) days in any calendar year shall NOT be considered original lessees of the unit. Lessee must obtain the prior written approval of Owner if an invitee of Lessee will be present at the Premises for more than fifteen (15) consecutive nights or thirty (30) days in a calendar year. Violation of the provisions of this section shall be deemed a substantial and material breach of this Agreement and is agreed to be a just cause for eviction.

11. **PETS:**   NO pets, dogs, cats, birds, fish, strays or other animals are allowed in or about the Premises, even temporarily or with a visiting guest, without prior written consent of Owner, except as allowed by law. Any such consent is conditioned upon Lessee completing, signing, and returning to Owner, Owner's Pet Agreement, which shall become part of this Agreement. Any breach of this clause shall be considered a just cause for eviction.

12. **WATERBEDS:**   Waterbeds and/or liquid filled furniture are PROHIBITED in accordance with Civil Code Section 1940.5. If the Premises are located in a structure for which the original Certificate of Occupancy was issued after January 1, 1973 then such furniture may be permitted only upon written consent of Owner, upon the completion of a Waterbed Agreement which shall become part of this Agreement, and subject to continued compliance by Lessee of all provisions therein.



Parkmerced

**13. ROOF:**   Use of the roof for any purpose by Lessees and/or guests is NOT permitted.

## 14. ASSIGNMENT AND SUBLETTING:

**No Assignment or Subletting: Lessee agrees and covenants not to assign this Agreement or sublet the Premises or any portion of the Premises. Therefore, neither all or any portion of the premises may be rented by any of the named Lessee(s) or any other persons to any other persons other than the named Lessee(s). This obligation of Lessee is intended as a strict and absolute prohibition against subletting and assignment and may not be waived by either party. The parties agree that violation of this covenant and obligation shall be just cause for eviction.**

**Lessee(s) Initials:**

**15. STORAGE:**   No storage space outside of Premises is authorized, permitted or provided under this Agreement.

**16. PARKING:**   Premises (check one) ☒ **Does NOT** ☐ **Does** include parking for any motor vehicles. In cases where premises does not include parking, parking is prohibited on or about the premises except where allowable by law. Where parking is provided or permitted, any parking or related plackard, sticker or other permit document as provided by Owner or Agent of Owner must be in plain and clear site so as to be seen in the front windshield of the permitted vehicle.

**17. UTILITIES:**   Lessee shall pay directly for all utilities, services and charges provided to the Premises EXCEPT for those listed as follows AS: **NONE.** Lessee agrees to put all utilities in Lessee's name prior to or when Lessee takes possession of the premises. Lessee agrees to comply with any energy or water conservation programs implemented by Owner. Lessee understands that the rent paid by all lessees is partially determined by the cost of utilities. Nothing contained herein prevents Owner from passing through to Lessee utility costs as provided by law.

In accordance with local regulations Owner shall provide one working telephone line and one working telephone jack into the Premises. Lessee may, at its sole expense, add additional lines and/or jacks, but no more than three, and said installation shall not cause cosmetic or physical damage to the Premises or any other part of the building. It is Lessee's responsibility to maintain and to repair all said lines. Unlike the local gas and electric company, the telephone company charges for time required to repair telephone lines, wall jacks, etc.

**Lessee(s) Initials:**

**18. MAINTENANCE AND REPAIRS:**   Lessee shall, at Lessee's expense, at all times maintain the Premises, furnishings and appliances, if any, in a clean and good condition and shall surrender the same upon termination of tenancy in the same condition as received (excepting normal wear and tear). Lessee understands that Lessee is responsible for the cost of repair of ALL damages in and/or about the Premises whether caused by Lessee, Lessee's guests or invitees.

Except in an emergency, maintenance and repair requests must be made in writing and delivered to Owner or its Agent, or over the phone. Such notice shall also be deemed permission to enter the Premises to perform such maintenance or repairs in accordance with Civil Code Section 1954 unless otherwise specifically requested, in writing, by Lessee. Lessee, however, may not place any unreasonable restrictions upon such access or entry. Owner believes the Premises is in a safe and habitable condition until written notice to the contrary is received by Owner.

In the event that Premises is provided with hardwood floors or other non-carpeted floor surfaces, Lessee hereby agrees to keep at least 80% of such areas covered with floor rugs or similar coverings. It is also hereby understood that Lessee shall not change or replace any window coverings or other dressings visible from outside the Premises or building without the prior written consent of Owner.

Lessee acknowledges that the Premises and the building from time to time may require renovations or repairs to keep them in good condition and repair and that such work may result in temporary loss of use of portions of the building or Premises and may inconvenience Lessee. Owner agrees to do any such work in a manner that is consistent with cost efficiencies, is the least disruptive or intrusive to Lessee, and Lessee agrees that any such work is part of the condition of the rental of the Premises and is contemplated in the amount of rent paid therefore.

**19. ALTERATIONS:**   Lessee shall NOT redecorate, paint, refinish floors, or otherwise alter the Premises in any way; Lessee shall not apply adhesive paper to any cabinets, walls, or doors; nor shall Lessee hang any plants, planters or lighting fixtures from ceilings or walls; nor shall Lessee tack, nail or glue any coverings to floors or walls without prior written consent of Owner. Lessee shall not install nor operate any washing machines, clothes dryers, air-conditioning or heating units, portable dishwashers, deep-freeze units (or other such appliances), pianos, organs, or outside antennae on the Premises without Owner's prior written consent. No plants, planters or plant boxes may be placed directly on floors or on carpets, on window ledges or on fire escapes.

**20. SATELLITE DISHES:**   Any Satellite Dish installations shall be subject to all of the following rules and conditions: a)



Satellite Dish must be installed within the Premises or inside balcony railings or windows; b) Satellite Dish may not exceed one (1) meter in diameter; c) installation must comply with reasonable safety standards; d) installation must not damage Premises, Premises walls or other appurtenances; e) Lessee remains strictly liable for any injury or damage to persons or property caused by the Satellite Dish and Tenant agrees to maintain sufficient liability coverage against any such injury or damage. Proof of such insurance must be provided to Owner, with Owner listed as an "Additional Insured," prior to approval of installation and upon each renewal of coverage.

**21. LOCKS:**     Lessee shall NOT change any lock or place additional locking devices upon any door or window of the Premises without the prior written consent of Owner. In the event of such installation Lessee shall provide Owner with keys to such lock or device within 48 hours. Once installed, an approved lock may not be removed even when the unit is vacated. **Keys to the Premises are the exclusive property of Owner.** Lessee shall not consign keys to the Premises to any other person without Owner's written consent. In the event that any keys to the Premises are lost, Lessee shall be liable for the entire cost of all key and lock replacement, at the discretion of Owner, as required for the security of the Premises, the building and its occupants. All keys must be returned to Owner when Lessee vacates, and such return shall designate the actual date and time of termination of tenancy. Lessee shall be charged for the cost of new locks and keys if all keys are not returned. The lockout fee is <u>$75.00</u>.

**22. DAMAGES TO PREMISES:**     If the Premises are so damaged by fire, flood, earthquake, or from any other cause so as to render them uninhabitable and therefore destroyed, the tenancy is terminated, unless restored pursuant to law.

**23. ENTRY AND INSPECTION:**     Owner shall have the right to enter the Premises pursuant to California Civil Code Section 1954. Such entry shall not be so frequent as to seriously disturb Lessee's peaceful enjoyment of the Premises. Owner shall give Lessee reasonable notice of its intention to enter the Premises and shall enter only during normal business hours. Normal business hours shall be defined as <u>Mon-Fri 8:00 AM - 7:00 PM, Sat 9:00 AM - 6:00 PM, Sun 10:00 AM - 5:00 PM</u>. Lessee may not place any unreasonable restrictions upon such entry. If, however, Owner reasonably believes that an emergency exists (such as a fire or flood) which requires immediate entry, such entry may be made without prior notice to Lessee.

If the Premises or the building in which the Premises are located is required by any government agency, lender or insurer to undergo repairs or alterations Lessee agrees to cooperate fully with Owner so that all such repairs or alterations are made in as expeditious and efficient a manner as possible.

**24. MOVE IN:**     All residents moving into the a tower must move in through the designated basement area. Should Tenant move in through the lobby, Tenant shall be responsible for any damage caused by the move. Said damage shall be assessed by Owner and passed onto Tenant for reimbursement. This is a material leasehold covenant. In addition, any furniture left behind shall be removed by Owner at Tenant's cost.

**25. NOTICES:**     Any notice which either party may give, or is required to give, may be given as required by law or by mailing the same by first-class mail to Lessee at the Premises, and to Owner at: <u>One Varela Avenue, SF CA 94132</u> or such other address designated by Owner.

**26. INTERRUPTION OF SERVICES:**     Owner shall not be liable to Lessee or to any other person in damages or otherwise, nor shall Owner be in default under this Agreement for any interruption or reduction of utilities or services caused by someone other than Owner, or by Owner due to circumstances beyond Owner's reasonable control.

**27. TERMINATION:**     <u>**Lessee(s) is responsible for and agrees to pay, as indicated in this lease agreement, the monthly rent and other applicable fees/charges incurred through the lease expiration date. Lessee(s) is further responsible for and agrees to provide Owner with a written notice-to-vacate at least 30 days prior to moving out.**</u> Lessee shall completely vacate the Premises and any parking or storage areas; give written notice of Lessee's forwarding address; and deliver all keys, furnishings, if any, and Premises to Owner in the same condition as received excepting normal wear and tear by the move-out date indicated in the written notice.

**Any attempt by Lessee to terminate the rental agreement prior to the expiration date shall be deemed to be in breach of this agreement and Owner shall be entitled to recover all damage occasioned thereby including prorated and monthly rent, leasing commission, advertising expenses and utilities maintained to show the unit.**

**Lessee(s) Initials:** <u>L.H.</u>

**28. OPTION FOR EARLY TERMINATION OF LEASE:**     Lessee may terminate its rental obligations under this Residential Tenancy Agreement by delivering to Owner a written notice stating Lessee's intent to vacate the premises within thirty



days and terminate the Residential Tenancy Agreement before the expiration date of its term. Such notice will be effective thirty (30) calendar days from the date it is given and rent must be paid through the thirty day notice period. Lessee must and shall, at the time of the service of pay to Owner, in addition to the rent owed during the thirty day notice period, a termination fee equal to **1 month's current rent**. If the full term of the lease is not fulfilled. Such payment will release lessee only from any further rental obligations beyond the date the termination is effective. However, all of the terms of the Residential Tenancy Agreement must be complied with through the date of vacating the premises. In the event the lessee vacates the premises before the lease expires without electing to pay said termination fee or fails to pay the termination fee for any reason, lessee shall be liable for all rent owed for the remainder of the lease or up to the time the premises are relet as well as all costs incurred by Owner to relet the premises, whichever occurs first.

**29. HOLDING OVER:**    Lessee agrees to vacate the Premises by **12:00 midnight** on the termination date of this tenancy. Should Lessee fail to vacate by said time the hold-over shall be presumed to be willful and deliberate and Owner shall be entitled to damages for the hold-over period, plus such other expenses incurred due to breach of this condition of the Agreement.

**30. NUISANCE:**    Lessee shall not commit, nor permit to be committed, any waste or nuisance upon or about the Premises. Lessee shall not disturb other lessees in the building containing the Premises or others in adjoining properties. Three complaints in any nine-month period shall constitute a substantial interference with other lessees' comfort, safety and enjoyment and shall be deemed a just cause for eviction. Lessee shall also be liable for the actions of their guests and/or invitees.

Lessee(s) Initials: _____

**31. HOLD HARMLESS:**    Owner shall not be liable for any damages or injury to Lessee, or any other person, or to any property, occurring on the Premises or any part thereof, or in common areas thereof, unless such damage is the proximate result of the negligence or unlawful act of Owner, his Agents or his employees. Lessee shall indemnify, defend and hold Owner and its Agents harmless from all claims of loss or damage to property and of injury to or death of any person or persons caused by the intentional acts or negligence of Lessee, his guests, licensees, or invitees occurring on or about the Premises including other areas of the building, adjacent sidewalks, streets, etc. Lessee hereby expressly releases Owner and/or Agent from any and all liability for loss or damage to Lessee's property or effects whether in the Premises, garage, storerooms or any other location in or around the building or premises, arising out of any cause whatsoever, including but not limited to rain, plumbing leakage, fire or theft, except in the case that such damage has been adjudged to be the result of the gross negligence of Owner or Agent.

Lessee(s) Initials: _____

**32. INSURANCE:    Owner's insurance does NOT provide for coverage of Lessee's personal belongings or personal liability unless as a direct and proximate result of Owner's negligence. Lessee is advised to procure and maintain at all times a policy of renter's insurance to insure all of Lessee's personal possessions. Owner will NOT accept liability or responsibility for any losses not caused by its own proximate negligence.**

Lessee(s) Initials: _____

**33. ARBITRATION:**    Any controversy or claim arising out of or relating to this contract, or the breach thereof, except claims relating to possession of the premises (e.g. evictions and unlawful detainer actions) shall be settled by arbitration administered by the Judicial Arbitration & Mediation Service or the American Arbitration Association, which service may be chosen by Owner at its sole discretion, and judgment on the award rendered by the arbitrator(s) may be entered into any court having jurisdiction thereof. The parties to the arbitration shall have the right to limited discovery as is determined necessary by the arbitrator.

Lessee(s) Initials: _____

**34. LEAD DISCLOSURE:**    Many homes and apartments built before 1978 have paint that contains lead (called lead-based paint). Lead from paint chips and dust can pose serious health hazards if not taken care of properly. The law requires that lessees and lessees receive certain information before renting pre-1978 housing. By signing this Agreement, Lessee represents and agrees that Owner has provided Lessee with such information, including, but not limited to, the EPA booklet entitled "**Protect Your Family From Lead In Your Home**." Any known lead-based paint or lead hazards at the Premises, if any, are hereby disclosed as follows: **SEE ADDENDUM.**



**35. ASBESTOS:**     The Premises may contain asbestos or have original construction materials that contain asbestos. Asbestos is known to exist in the following locations: _____ (Copies of available reports, if any, are attached hereto for your reference and information.) Damaging or disturbing the surface of asbestos-containing materials (ACMs) may increase the risk of exposure. Therefore, Lessee and Lessee's guests, contractors, or invitees shall not allow any action which may, in any way, disturb ACMs or any part of the premises that may contain asbestos or ACMs. Lessee shall notify Owner immediately if Lessee knows or suspects that an ACM has been disturbed or if Lessee becomes aware of any ACM that is showing signs of deterioration.

**36. HAZARDOUS MATERIALS DISCLOSURE:**     Pursuant to the regulations of Proposition 65, enacted by the voters of California, Owner hereby makes the following required disclosure: "Warning - The premises contains chemicals known to the State of California to cause cancer and birth defects or other reproductive harm. More information on specific exposures is provided to Lessees in the ADDENDUM G attached hereto and is available at www.prop65apt.org."

**37. PEST CONTROL NOTIFICATION:**     You are hereby notified that a registered pest control company is contracted for periodic pest control services at **Parkmerced**. The premises you are renting, or the common areas of the building and /or premises are covered by such a contract for regular pest control services. By law, you are required to receive this notification and the notice provided by the registered pest control company which is attached hereto as an ADDENDUM I. By signing this Residential Tenancy Agreement, you acknowledge that you have read and understand the foregoing and the referenced attachment.

Lessee(s) Initials: <u>L.H.</u>

**38. GENERAL:**     The invalidity or partial invalidity of any provision of this Agreement shall not render the remainder of the Agreement invalid or unenforceable. Violation by Lessee of any applicable ordinance or statute shall be deemed sufficient cause for termination of tenancy. No oral agreements have been entered into. This Agreement shall not be modified unless reduced to writing. Time is of the essence of this Agreement.

**39. REGISTERED SEX OFFENDERS NOTICE:**     Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and the ZIP Code in which he or she resides.

**40. NO WAIVER:**     No failure of Owner to enforce any term of this Agreement will be deemed a waiver of that term or of any other term of the Agreement. The waiver by Owner of any term of this Agreement will not be deemed to be a waiver of any subsequent breach of the same or any other term of this Agreement, nor will any custom or practice which may develop between the parties be construed to waive or to lessen the right of Owner to insist upon performance by Lessee of all the provisions of this Agreement. The subsequent acceptance of rent by Owner will not be deemed to be a waiver of any preceding breach by Lessee of any term of this Agreement regardless of Owner's knowledge of such preceding breach at the time of acceptance of such rent. Owner's acceptance of a partial payment of rent will not constitute a waiver of Owner's right to the full amount due nor will Owner's acceptance of rent paid late ever constitute a waiver of Owner's right to evict Lessee for habitual late payment of rent.

**41. ESTOPPEL CERTIFICATES:**     Lessee and each of them and all persons holding under them, within five (5) days after receipt from Owner, shall sign and return to Owner a certificate, statement, or other such document signed by all occupants providing such information, as Owner may reasonably request, under penalty of perjury, including, but not limited to, the amount of base rent currently paid, the names of each occupant and their respective dates of occupancy, the date of the last rent increase, the status of each occupant entitled to special benefits based on age, health, disability, income, or other criteria, under any provision of the local rent laws or other applicable law, the identity of furniture or fixtures that belong to Lessee, whether the rent includes any parking space or storage space, and the amount of any security deposit or prepaid rent and whether interest on said deposit has been paid and through which date. In addition, Lessee shall disclose, upon request, any information that Lessee believes would prevent any purchase of the Premises or would prevent Owner or potential owner from moving into the Premises. Failure to deliver the above described document within the five (5) days shall be a material breach of this Agreement.

**42. LEGAL FEES:**     Lessee shall pay all costs, including reasonable attorney's fees incurred by Owner in connection with enforcing the obligations of Lessee under this Residential Tenancy Agreement. In any action between Owner and Lessee in which Lessee would or might be entitled to recover reasonable attorney fees based on any statute, the parties agree that the right to recover reasonable attorney fees in any such action shall be mutual and reciprocal notwithstanding any statutory provision that would limit recovery of fees to a prevailing lessee only.



Parkmerced

**43. NO RELIEF FROM FORFEITURE:**   Owner and Tenant stipulate that for purposes of Code of Civil Procedure Section 1179, that as a condition for granting relief from forfeiture, Tenant shall pay all back rent, Owner's attorney fees and costs, and any other damages sustained by Owner, as a condition for relief from forfeiture.

**44. REPRESENTATIONS TO THE OWNER:**   The Lessee has made certain representations to the Owner about his credit history, rental history, financial affairs, criminal background and other relevant information, in order to induce the Owner to rent the Apartment to the Lessee. This Lease has been entered into in reliance by the Owner on this information, with respect to both what Lessee represented on his rental application or otherwise. In the event any of the information is untrue or misleading or incomplete then the Owner reserves the right to cancel this Lease within a reasonable time after the Owner discovers the truth. If the Owner discovers the misrepresentation(s) prior to the Lessee taking occupancy, such cancellation will preclude the Lessee from taking occupancy. Lessee acknowledges and agrees that such discovery occurring after occupancy shall be grounds for Lessee's immediate eviction at the Owner's option, and if requested to do so by Owner, Lessee shall immediately vacate the Property and shall be liable to the Owner for all of his costs, expenses and damages that he may suffer by reason of the Lessee's misrepresentation, including Owner's reasonable attorney's fees incurred.

**45. COMMUNITY POLICIES:**   Lessee agrees to abide by any and all Community Policies, whether made known before or after the date of this Agreement, including, but not limited to, rules with respect to noise, odors, disposal of refuse and use of common areas. Lessee has read, understands and agrees to be bound by the existing Community Policies attached to and made part of this Agreement.

**46. ENTIRE AGREEMENT:**   This Agreement consists of _1 consecutively numbered paragraphs, the Community Policies, and attachments identified as:

☒ Asbestos Disclosure                    ☒ Community Policies
☒ Electronic Funds Addendum              ☒ Job Loss Addendum
☒ Mold/Mildew and Lead Disclosure        ☒ Move Out/Replacement Charges
☒ Parking and Garage Addendum            ☒ Recreational Facility Regulations
☒ Security Deposit Agreement             ☒ SureDeposit Enrollment Form
☒ Tenancy Agreement for Payment of Rent  ☒ Tenant Information Sheet
☒ Utility Addendum                       ☒ Utility Provider Information
☒ Move-In/Move-Out Inspection

The foregoing constitutes the entire Agreement between the parties and may be modified only in writing signed by all parties except that Owner may change the terms of the tenancy and this Agreement pursuant to Civil Code Section 827.

**BY SIGNING BELOW LESSEE(S) HEREBY ACKNOWLEDGE(S) READING AND UNDERSTANDING THE TERMS OF THIS AGREEMENT, AND FURTHER ACKNOWLEDGE(S) RECEIVING A COPY HEREOF:**

Signed by LYNN HAMBOLU
Thu Mar 4 11:47:18 AM PST 2010
Key: 4E34DDFC; IP Address: 173.11.64.177

Signed by LYNN GEYER
Thu Mar 4 11:47:19 AM PST 2010
Key: B16619AB; IP Address: 173.11.64.177

Lynn Hambolu *(Resident)*                                      Date

*(Owner/Agent)*                                               Date

7



Parkmerced

# DISCLOSURE OF INFORMATION ON ASBESTOS CONTAINING MATERIALS

Prior to the 1980's asbestos was a common component of materials used in the construction of hospitals, schools, offices, industrial construction and residential buildings. Under certain circumstances, the presence of asbestos in buildings may pose a health risk to the occupants. In order to ensure that the public is informed of these risks, the California legislature adopted Assembly Bill 3713, which requires, among other things, that the owner of a building constructed before 1979 inform tenants of the presence of Asbestos Containing Materials ("ACM") in the building. The current definition in the statue is that ACM comprises construction materials containing "More than one-tenth of one percent asbestos by weight."

We believe that ACM may exist in the following locations in the tile floors on the second through top floors, halls and elevators of all the high rise apartment buildings: asbestos insulation is on the piping and heaters in the boiler rooms, laundry rooms and the basement hallways, asbestos insulation may also be present on some heating system duct work in garden apartments in the heater closet, and in some apartment kitchen floor coverings.

The mere presence of undisturbed and non-friable ACM in a building does not present a health hazard. Exposure to airborne asbestos fibers can cause asbestos-related diseases. Asbestos is listed under Proposition 65 as a chemical known to the State of California to cause cancer. To comply with Proposition 65, **Parkmerced** has posted notices in the building. There are uncertainties about the level of exposure, which can cause disease. If you wish to obtain further information regarding potential health risks or impacts of asbestos, please contact your local or state public health agencies.

Asbestos can release fibers if disturbed. Certain general procedures and handling restrictions are necessary when dealing with ACM. It is important that the materials not be moved, drilled, bored, sanded, cored, broken or otherwise disturbed in order to prevent and minimize potential release of asbestos fibers. Such activities may present a health risk and should not be attempted by any person who is not trained in the handling and disposal of ACM.

**Parkmerced** retained a consulting firm specializing in the field of ACM detection and abatement to complete a survey of the complex to ascertain where ACM is specifically located and if the material is in hazardous condition. This engineering firm has conducted a survey of the building in **Parkmerced**. A copy is available for review by our tenants in the Administration Office.

```
Signed by LYNN HAMBOLU                    Signed by LYNN GEYER
Thu Mar 4 11:47:25 AM PST 2010            Thu Mar 4 11:47:27 AM PST 2010
Key: 4E34DDFC; IP Address: 173.11.64.177  Key: B16619AB; IP Address: 173.11.64.177
```

Lynn Hambolu *(Resident)*                          *Date*          *(Owner/Agent)*                                    *Date*

8



Parkmerced

# COMMUNITY POLICIES

1. In addition to a **$50.00** handling fee, an accrued late charge will be collected on any returned check. If Lessee gives Manager two checks that are returned for non-payment during the term of the Lease, the future rent payments shall only be made by cashier's check. This policy will be applicable throughout the balance of either the initial term or any renewal or extension thereof.

2. Please limit your speed within the apartment community to **5 m.p.h.**. Motorcycles and bicycles may be ridden only on driveways and parking lots.

3. The equipment in the bathrooms and kitchens shall not be used for any purposes other than those for which they were constructed. No sweepings, rubbish, rags, disposable diapers, sanitary napkins, tampons, ashes or other obstructive substances shall be thrown therein. Do not place metal, string, grease, coffee grounds, nut shells, glass, olive or fruit pits, corn cobs, paper, wire, bones or non-food in disposal. Lessee shall be held responsible for any repairs or damage resulting from the misuse of such equipment and shall reimburse Manager for necessary expenses incurred in the repair of such equipment. Portable washers or dryers that are not approved in writing by the Manager are prohibited.

4. Lessee shall not make or permit any noise, or engage in or permit any other conduct that disturbs or offends other Lessees or neighbors. Special consideration must be exercised **between the hours of 10 pm and 8 am**. Lessee must comply with the directions of Owner and Owner's determination shall be final. Lessee is responsible for ensuring that disturbing noises are not caused by Lessee's family, guests or invitees. Social gatherings of Lessee and their guests are welcomed and encouraged provided that such gatherings do not become loud, boisterous, or generally objectionable, as judged in Owner's sole discretion, so as not to interfere with the right of quiet enjoyment of other Lessees and neighbors. Hosting a loud, boisterous party in violation of this rule may lead to Lessee's eviction.

5. There may be card-operated laundry facilities located on the property. Please report machines which are not operating properly to the office. Washers and dryers can be dangerous, therefore, no one should play in the laundry facilities. Please do not use the laundry trash dispensers for your household trash. We appreciate your help in keeping our laundry facilities clean.

6. Trash and recycle containers are provided for each apartment. These containers are provided for your convenience. Do not place trash on the ground if your trash containers are full as any trash outside of the provided containers will NOT be picked up by the trash company. Do not use park trash containers for your household trash. For household trash, containers are picked up at the curb each Friday. The date of trash pick-up is subject to change. Residents are responsible for removing their trash and recycling containers from the curb within 24 hours of pick-up. They should be placed in your garage or in a location not visible from the street. Please do not place containers in a walkway or a place that will disturb your neighbors. Littering (trash, paper, and cigarette butts, cans, etc.) in or around the apartment community is not permitted. All areas visible to the public including patios in the control of Lessee must be maintained in a clean and orderly manner, free of the following items, but not limited to: trash, boxes, debris, storage containers, excessive plants, bicycles, toys, tires, and appliances. These areas must be maintained so as not to create a visible or other hazard whatsoever.

7. The use of any charcoal burner, liquid petroleum gas fueled or any other open flame cooking device are prohibited in tenant's unit or on their patio/balcony.

8. No unnecessary loitering in the management office, amenity areas or parking areas.

9. Skateboards, motorcycles, bicycles and similar vehicles may not be stored in entry ways or under stairs. Motor vehicles must be parked on the street, in a driveway, or in a garage. NO and vehicle shall be parked on any sidewalk, pathway, or walkway designated for pedestrian use; or any unpaved area including lawn, landscaped areas, and trails unless prior authorization is received from all local law enforcement. All bicycles can not be parked in such a way as to be a hazard to vehicles or pedestrians.

10. All residents moving into the tower must move in through the designated basement area. Should Tenant move in through the lobby, Tenant shall be responsible for any damage caused by the move. Said damage shall be assessed by Owner and passed onto Tenant for reimbursement. This is a material leasehold covenant. In addition, any furniture left behind shall be removed by Owner at Tenant's cost.

**Signed by LYNN HAMBOLU**
Thu Mar 4 11:47:32 AM PST 2010
Key: 4B34DDFC; IP Address: 173.11.64.177

**Signed by LYNN GEYER**
Thu Mar 4 11:47:34 AM PST 2010
Key: B16619AB; IP Address: 173.11.64.177

| | | |
|---|---|---|
| Lynn Hambolu *(Resident)* | Date | |
| *(Owner/Agent)* | Date | |



Parkmerced

Dear **Lynn Hambolu**,

Re: Pay your rent electronically or by check

When you provide a check as payment, you can authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. Please note, when we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment. You will not receive the physical check back from your financial institution, but you will see the amount withdrawn on your monthly bank statement, just as with any other electronic fund transfer.

Please do not hesitate to contact Resident Services if you have any further questions. We appreciate the opportunity to serve you better.


Thank you,
**Parkmerced**



Parkmerced

# ADDENDUM TO LEASE AGREEMENT

Addendum to lease dated: <u>March 4, 2010</u> Apt. #<u>24040</u>

Between Resident(s): <u>Lynn Hambolu</u>

And Landlord: <u>Parkmerced Investors Properties, LLC dba Parkmerced</u>

RE: Risk Free Rental Terms

Landlord hereby waives termination fee if resident involuntarily loses his/her job during the term of this lease agreement. All eligible parties will be required to provide verification from the employer that states the Employee/Resident's employment has been terminated involuntarily. This information will need to be provided on company letterhead along with a contact and phone number to the Human Resources Department to verify information verbally.

To be eligible for this program, the Resident must fulfill a 30-day written notice, and must be current with all rental amounts due through the date of move-out. Also, apartment must be left in good condition with no damages, or damages will become due and payable to avoid further collections.

```
Signed by LYNN HAMBOLU                  Signed by LYNN GEYER
Thu Mar 4 11:47:38 AM PST 2010          Thu Mar 4 11:47:40 AM PST 2010
Key: 4E34DDFC; IP Address: 173.11.64.177   Key: B16619AB; IP Address: 173.11.64.177
```

**Lynn Hambolu** *(Resident)*                    *Date*     *(Owner/Agent)*                    *Date*



Parkmerced

# DISCLOSURE OF PRESENCE OF
# MOISTURE/MOLD/MILDEW

Due to coastal and other conditions, Resident hereby acknowledges that there is a likelihood of developing moisture, mold or mildew in the demised premises. Resident further acknowledges that his/her maintenance practices may create or increase the level of moisture, mold and mildew at the premises.

Resident agrees to examine, clean and maintain the demised premises regularly in order to keep it free of any moisture, mold or mildew. Resident further agrees to immediately notify Landlord in writing in the event Resident notices the development of moisture, mold and mildew at or about the demised premises.

Furthermore, Resident agrees to defend, hold harmless and indemnify Landlord from any claim, cause of action or complaint by a third party (i.e., a person who is not a party to this Lease) relating to any personal injury, property damage, or other damage alleged to have been caused, entirely or in part, by exposure to moisture, mold and/or mildew due to any negligent act or omission on the part of Resident.

By signing this Addendum, Resident acknowledges that he/she is satisfied that the premises is safe and free from moisture, mold and/or mildew at the time Resident takes possession. Resident further agrees that it is the sole responsibility of Resident to take reasonable measures to ensure that the demised premises remains free of moisture, mold and mildew at all times.

In consideration of their mutual promises, Landlord and Resident agree that this Addendum is hereby incorporated into the Lease Agreement as though fully set forth herein.

---

# DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT AND/OR
# LEAD-BASED PAINT HAZARDS

**Lead Warning Statement**

Recently issued Federal regulations require landlords to inform their tenant(s) about lead-based paint. Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Landlords must disclose the presence of known lead-based paint and lead-based paint hazards in the dwelling. Residents acknowledge that they have received a Federally approved pamphlet titled, "Protect your family from lead in your home".

**Landlord's Disclosure**

(a) As a result of a 1999 lead-based paint survey of **Parkmerced**, lead-based paint was determined to be present on certain architectural components of **Parkmerced**'s residential structures. The painted surfaces are in good condition, free of cracks, chips gouges or other disturbances to the surfaces.

(b) **Parkmerced**'s only available records or reports pertaining to lead-based paint and/or lead-based paint hazards in its housing, the prior owners 1995 lead-based paint survey and the current 1999 lead-based paint survey, are available for inspection during regular business hours, Monday through Friday, at **Parkmerced** rental office.

(c) Landlord is proceeding with certain lead abatement procedure.

Tenant(s) Initials: __L.H.__

Certification of Accuracy

The Landlord and Resident certify, to the best of their knowledge that the information provided by each is true and accurate.

```
Signed by LYNN HAMBOLU                    Signed by LYNN GEYER
Thu Mar 4 11:47:52 AM PST 2010            Thu Mar 4 11:47:57 AM PST 2010
Key: 4E34DDFC; IP Address: 173.11.64.177  Key: B16619AB; IP Address: 173.11.64.177
```

| | |
|---|---|
| **Lynn Hambolu (Resident)** _____ Date | _(Owner/Agent)_ _____ Date |



Parkmerced

# MOVE OUT/REPLACEMENT CHARGES

This document is incorporated into and shall become a part of the Lease Agreement by and between **Parkmerced** and

| Resident Name(s) |
|---|
| Lynn Hambolu |

| Apartment Address |
|---|
| 22 Grijalva Drive #24040, San Francisco, CA  94132 |

**SUMMARY OF ESTIMATED MOVE OUT CHARGES:**

| | STUDIO | 1 BEDROOM | 2 BEDROOM | 3 BEDROOM |
|---|---|---|---|---|
| Pest Control | $25.00 | $35.00 | $40.00 | $50.00 |
| Bathroom Pedestal sink | $227.80 | $227.80 | $227.80 per | $227.80 per |
| Carpet Replacement | $1,000.00 | $1,120.00 | $1,400.00 | $2,300.00 |
| Carpet Replacement (renovated) | $1,500.00 | $1,739.84 | $2,680.64 | $3,629.72 |
| Carpet Shampoo | $114.00 | $123.00 | $154.00 | $215.00 |
| Kit. or Bath.vinyl Floors | $319.00 | $345 to $510 | $345 to $675 | $510 to $840 |
| Kit. or Bath.Tile Floors (renovated) | Actual cost | Actual cost | Actual cost | Actual Cost |
| Kitchen Counter | Actual cost | Actual cost | Actual cost | Actual Cost |
| Full Paint | $591.20 | $591.20 to $665.10 | $812.90 to $886.80 | $1108.50 to $1182.40 |
| Full Paint (renovated) | $1,274.00 | $1565.00 to $1665.00 | $1881.00 to $2175.00 | $2310.00 or $2675.00 |
| Partial Paint | $300.00 | $332.55 to $406.45 | $406.45 to $443.40 | $554.25 to $591.20 |

**REPLACEMENT/REPAIR CHARGES:**  Should replacement of damaged or missing items be necessary or repairs made in the apartment, the following minimum charges will be assessed, labor included. Items not included on the list will be billed at actual cost.

| ITEM | COST | ITEM | COST | ITEM | COST |
|---|---|---|---|---|---|
| Window Coverings - Labor $35 per hr | Actual Cost | Interior Doorknob | $51.43 | Smoke Detector | $45.95 |
| Garbage Disposal | $165.15 | Dining Room - Ceiling Fan | $132.46 | Switch Plate | $37.00 |
| Range Knobs | $15.00 ea. | Light Fixtures - Vanity | $67.84 | Mirrors | $50.00 |
| Cabinet Handles | $36.54 or $51.43 | Light Fixtures - Hallways | $48.46 | Bathroom Faucet | $109.52 |
| Dishwasher Rack | $34.00 | Light Bulb Replacement - Bathroom | $10.00 ea. | Shower Curtain Bar | $67.31 |
| Kitchen Faucet | $125.58 | Light Bulb Replacement - Kitchen | $15.00 ea. | Medicine Cabinet | $68.94 or $144.49 |
| Appliances | Actual Cost | Mail Box Lock | $45.00 | Toilet Seat | $7.00 |
| Bi-fold Closet Door | $150.00 | Re-Key Lock | $150.00 | Soap Holder | $44.30 |
| Interior Door | $1,000.00 | Stairwell Carpet Replace | $295.44 | Toilet Paper Dispenser | $49.50 |
| Entry Door | $1,200.00 | Kitchen Cabinets Repaint | $300.00 | Towel Bar | $53.00 |
| Patio Door | $1,100.00 | Wood Floor Refinish | $1200 to $1600 | Tub Resurfacing | $320 to $600 |

**OTHER CHARGES:**    Labor Charges and supply costs will be assessed for trash removal, doors, doorframes, power devices, shelving, heat registers, removing contact paper, mirror tiles, wallpaper and any other miscellaneous repairs or cleaning cost incurred.

| ITEM | COST | ITEM | COST | ITEM | COST |
|---|---|---|---|---|---|
| Bathroom Cabinets/med cab cln | $15.85 per | Dishwasher cln. | $30.75 | Stairwell carpet shampoo | $92.25 |
| Bathroom Floor cln. | $30.75 per | Oven/Range cln. | $30.75 | Wall Paper Removal | $74.90 per hr |
| Bathtub cln. | $30.75 per | Refrigerator cln. | $30.75 | Touch Up Paint | $74.90 per hr |
| Shower wall/Tile | $30.75 per | Sinks: Kitchen | $15.85 per | Trash/Furniture Removal | $30.75 per hr |
| Blinds cln. | $30.75 per | Bathroom | $15.85 per | Wall Cleaning | $30.75 per hr |
| Commode cln. | $30.75 per | Janitor Hourly Rate | $30.75 | Window Cleaning | $30.75 per hr |
| Mirror cln. | $15.85 | Plumber Hourly Rate | $82.16 | Shelf paper Removal | $30.75 per hr |
| Kitchen Floor cln. | $30.75 | Handyman Hourly Rate | $35.00 | | |
| Light Fixtures cln. | $15.85 per | Carpenter Hourly Rate | $85.00 | | |
| Stairwell Full Paint | $300.00 | Painter Hourly Rate | $74.90 | | |

**PAINT:**    Management shall assess charges against the security deposit for the painting of walls. A pro-rated charge will be assessed for normal wear and tear for painting based on the following charges.

**1-12 Months - Full Cost of Refurbishment or hourly rate for touch up.**

**13-36 Months - Total amount of fullpaint will be prorated for the remaining months of occupancy.**

**Total will be based on the 3 year life span of paint.**

*Modified walls or color changes are not depreciable, resident must bring back to original move in condition or full paint charges will apply.

| Carpet estimated life span | Paint estimated life span |
|---|---|
| 5 years | 3 years |

Nothing herein shall be constructed as a limitation upon landlord's right to pursue cause for damages not specifically listed above.

Signed by LYNN HAMBOLU
Thu Mar 4 11:48:03 AM PST 2010
Key: 4E34DDFC; IP Address: 173.11.64.177

Signed by LYNN GEYER
Thu Mar 4 11:48:04 AM PST 2010
Key: B16619AB; IP Address: 173.11.64.177

| Lynn Hambolu (*Resident*) | Date | (*Owner/Agent*) | Date |
|---|---|---|---|



Parkmerced

# PARKING AND GARAGE ADDENDUM

| Resident(s):<br>Lynn Hambolu | | Apartment #:<br>24040 |
|---|---|---|
| **Parking Information** | | |
| Parking Space #(s):<br>N/A | Garage #(s):<br>N/A | Carport #(s):<br>N/A |

**CONDITION OF RESIDENCY:**    Occupant shall, as a condition of this agreement, be an approved resident of **Parkmerced**. Occupant agrees to vacate this garage upon vacating his/her apartment.

1. **ASSIGNMENT:**    Occupant understands that assignment and/or sublet of the said premises is not permissible and would, therefore be considered a direct violation of the Lease Agreement.

2. **PURPOSE:**    This garage will be used for the purpose of parking an automobile, truck, or motorcycle only. Garage may not be used for storage or major car repairs. No business enterprise may be conducted on the premises.

3. **LIABILITY:**    Occupant understands and agrees that anything placed in said garage will be at his or her own risk. Management shall not be liable for injury, theft, and/or damage resulting from any cause whatsoever, including Acts of God, in any and all claims filed.

4. **ACCESS:**    Management may enter garage for inspection, maintenance repairs or emergencies.

5. **RULES:**    Occupant agrees to obey all rules and regulations of this apartment community. Inoperable and/or unregistered vehicles are not permitted anywhere on the premises, including the garages. Toxic and/or flammable materials may not be stored in the garage at any time.

6. **DAMAGE:**    Resident will be held responsible for any and all damages to garage area including oil and/or any other vehicle fluid stains.

7. **ADDITIONAL RENT:**

By execution hereof, this addendum shall be deemed, and wholly incorporated, as part of the lease/rental agreement between all parties as defined on the signed lease contract. Any additional consideration paid for the use of the garage shall be deemed "additional rent", properly included in any demand for rent payment pursuant to California Law.

I/we understand and agree to abide by the covenants of this agreement.

| Signed by LYNN HAMBOLU<br>Thu Mar 4 11:48:10 AM PST 2010<br>Key: 4E34DDFC; IP Address: 173.11.64.177 | Signed by LYNN GEYER<br>Thu Mar 4 11:48:16 AM PST 2010<br>Key: B16619AB; IP Address: 173.11.64.177 |
|---|---|
| **Lynn Hambolu** *(Resident)*                     *Date* | *(Owner/Agent)*                                      *Date* |

14



# RECREATIONAL FACILITY REGULATIONS

In consideration of the right to use the recreation facilities, the Lessee agrees that neither the management or owner of the community, nor their agents, managers, employees, assigns and successors shall be liable for claims, demands, costs or expenses arising out of any personal injury, property damage or loss which may be sustained by the Lessee or any persons whom the Lessee allows to use the facilities, whether or not caused in whole or in part by the active or passive actions of the management or owner of the community, its agents, managers, employees, assigns and successors, or any cause whatsoever. In this regard, the Lessee hereby agrees to assume all risk of such occurrences and to hold owner harmless and indemnify and defend same against any and all claims, liabilities, damages, liens and expenses (including without limitation reasonable attorney's fees arising directly or indirectly from any such occurrences). Our amenities are provided to please our Lessees. Please exercise care when enjoying the recreation facilities, as Management is not responsible for physical injuries that result from the use of our courts and facilities. Any damages to any of the recreational facilities caused by Lessee, Other Occupants or their guests will result in Lessee being responsible for the cost of the damages. *Take caution to lock Common Area doors on your way out.* No pets allowed in any of the Recreational Facilities. Thank you for your cooperation in connection with the below regulations and we hope you will understand that such rules are for the sole purpose of increasing the enjoyment of our Lessees.

| BUSINESS CENTER |
|---|

Certain **PARKMERCED INVESTORS PROPERTIES, LLC DBA PARKMERCED** community locations have been equipped with business centers for use of the Lessees and Other Occupants.

**A.** Business center hours are set by Lessor and are subject to change.

**B.** No food or beverages will be allowed in the business center.

**C.** Please treat the equipment correctly. If assistance is needed in operation or for repairs, contact the management office.

**D.** Excessive noise and unruly conduct in the business center is prohibited.

Any person in violation of these rules will be asked to vacate the area immediately. Failure to adhere strictly to the above rules and regulations is acknowledged as grounds for suspension of Fitness Center privileges or termination of the tenancy in accordance with the State law.

| FITNESS CENTER |
|---|

All persons using Fitness Center do so at their own risk. The Lessor does not assume responsibility for accidents or injury.

**A.** Fitness Center is for the use of Lessees and Other Occupants only.

**B.** No food or alcohol is permitted.

**C.** No boisterous or unruly conduct is allowed in the Fitness Center.

**D.** Excessive noise is prohibited.

**E.** Fitness Center equipment and supplies are not to be removed from the Fitness Center at anytime.

Any person in violation of these rules will be asked to vacate the area immediately. Failure to adhere strictly to the above rules and regulations is acknowledged as grounds for suspension of Fitness Center privileges or termination of the tenancy in accordance with the State law.

| BILLARD & GAME ROOM |
|---|

Lessee is responsible and must take full responsibility for borrowed pool cues, balls and chalk. Any damage, theft or loss will be replaced in full to management. In addition, Lessee, Other Occupants and their guests must comply with the following rules and regulations:

**A.** Guests must be accompanied by a Lessee or Other Occupant.

**B.** Players must be able to properly use the cue and not cause it, or the pool table or balls to be damaged thereby.

**C.** Use of the tables is limited to normal billiard and pool games only. No gambling allowed.

**D.** No alcohol or food is allowed.

**E.** No smoking.

**F.** No music (only supplied by clubhouse).

**G.** If someone is waiting, relinquish billiard equipment after one game.

**H.** Please re-set balls and put cues in racks when done.



Parkmerced

**I.** Shoes must be worn in the clubhouse at all times.

Lessee, Other Occupants and their guests must comply with the rules as stated above. If not, one formal warning will be verbalized by the Resident Manager. If still not complied with, the person(s) in violation will be asked to leave and the incident will be noted in Lessee's file. Game and Billiard room hours will be set by community management and can be changed at any given time.

| MEDIA AREAS |
|---|

Certain **PARKMERCED INVESTORS PROPERTIES, LLC DBA PARKMERCED** community locations have been equipped with media rooms or areas for use by our Lessees. Please follow these guidelines:

**A.** Media area hours are set by Lessor and are subject to change.

**B.** No food or beverages is allowed in the media areas.

**C.** Please treat the equipment correctly. If assistance is needed in operation or for repairs, contact the management office.

**D.** Excessive noise and unruly conduct in the media center is prohibited.

**E.** Equipment within the media area is property of Lessor and may not be removed.

INITIAL: L.H.



Parkmerced

# SECURITY DEPOSIT AGREEMENT

**This Agreement** is made this day, <u>March 4, 2010</u>, by and between <u>**Parkmerced**</u> (hereinafter referred to as "Lessor"), Lessor of the apartment complex in which the "Premises", as hereinafter defined, are located, acting pursuant to express written authority given by the owner of such apartment complex, and <u>**Lynn Hambolu**</u> (hereinafter referred to as "Lessee"), in connection with the Apartment Lease Agreement (the "Lease") between Lessor and Lessee for: <u>**Parkmerced**</u> (the "Premises").

1. **Security Deposit.** Lessor hereby acknowledges receipt from Lessee of the sum of: <u>$0.00</u> (Security Deposit) which represents the security deposit payment under the Lease, which shall hereinafter be defined as "Security Deposit". Lessor will hold the Security Deposit for the faithful performance by Lessee of his/her obligations under the Lease, including payment of rent, and cleaning and repair of the Premises after its surrender.

2. **Refund of Security Deposit.** Lessor shall deduct from the Security Deposit all monies expended as a result of any breach of the lease or this agreement, including but not limited to the following:

    A. Vacate completely the entire Premises by Lessee on or before the date specified in the required written <u>**30 day**</u> move-out notice.

    B. Expiration of the term of the Lease, or termination or cancellation of the Lease in accordance with the express provisions thereof.

    C. Payment by Lessee of all rental required under the Lease, up to and including the date of expiration or termination of the term of the Lease, or the full move-out notice period, whichever is longer.

    D. The Premises, including all kitchen appliances (refrigerator, oven, and range) and including all baths, closets, storage areas, patios/balconies, etc. have been thoroughly cleaned, so as to be in the same condition as they were in on the commencement date of the term of Lease, normal wear and tear excepted.

    E. No defects or damage to the Premises, whether caused by Lessee, pets, or otherwise, unless shown on a written list of damages and defects signed by Lessee at the commencement of the Lease term.

    F. Observance and performance by Lessee of all of the other covenants and obligations to be kept or performed by Lessee under the Lease up to and including the date of expiration or termination of the Lease term.

    G. Observation and performance by Lessee of all rules and regulations to be kept and performed by Lessee under the Lease, including, without limitation, those rules and regulations pertaining to pets.

    H. **LESSEE has given LESSOR <u>thirty</u> days written notice prior to the date of expiration or termination of the term of the Lease.**

    I. Lessee has provided Lessor with a written copy of the forwarding address of Lessee.

3. **Deductions.** Within twenty-one (21) days after Lessee has vacated the Premises, Lessor shall furnish Lessee with an itemized written statement of the basis for, and the amount of, any security received and the disposition of such security to Lessee.

4. **Move-Out Procedures.** When Lessee moves out of the Premises, an inspection of the condition of same shall be made after all of the personal effects of Lessee have been removed. Lessee should accompany Lessor during said inspection to help resolve any problems that may arise. Failure of Lessee to do so shall constitute a concurrence by Lessee in Lessor's assessment of charges for damages or cleaning. After inspection by Lessor, appropriate charges will be assessed by Lessor for any missing items; damages or repairs to the Premises, or its contents (normal wear and tear excepted) with the exception of those items listed on the Move-In/Move-Out Inspection Report attached to this agreement; insufficient light bulbs; scratches, burns, or holes in the walls, doors, floors, draperies, carpets and/or furniture; and for cleaning the Premises (including all kitchen appliances). Lessee shall be charged for each unreturned key (mail-box key), and charged for replacing locks if all door keys to the Premises are not returned to Lessor.



Parkmerced

# ADDENDUM TO RESIDENTIAL TENANCY AGREEMENT for PAYMENT OF RENT INSTALLMENTS

**Whereas, Owner and Lessee hereby agree to amend the Residential Tenancy Agreement, at the inception of the tenancy, in the following manner, pursuant to this addendum for Payment of Rent Installments:**

**One:**    That the initial term of the tenancy shall commence on **March 1, 2010** and end on **February 28, 2011** at the end of the day ("Initial Term"). The full value of the Lease is $**27,516.00**.

**Two:**    Rent for the Initial Term shall be paid in **12** equal installments. Rent is payable in advance on the first day of each month, without offset, to Owner, for months of **March 1, 2010** through **February 28, 2011** of the Initial Term. The amount of each installment shall be as follows:

Rent from **March 1, 2010** to **February 28, 2011** in the amount of $**2,293.00** per month.

**Three:**    At the time that Lessee executes the Residential Tenancy Agreement, Lessee shall be required to remit the first installment of rent for **March** ("First Installment"). The remittance of the First Installment is not a security deposit. The First Installment shall be applied to **March**, and Lessee acknowledges that the date when the Residential Tenancy Agreement is signed may be different from the beginning of **March**. Lessee also acknowledges that the First Installment is applied to **March** regardless of whether or not Lessee takes occupancy of the Premises at the beginning of **March** or at any time thereafter; moreover, should Lessee breach the Residential Tenancy Agreement and never take occupancy of the Premises (or any other designated rental unit assigned pursuant to the Residential Tenancy Agreement), then the First Installment is entirely forfeited and shall not be refunded, but instead applied to **March** in accordance with the terms hereof.

**Four:**    Lessee shall remit to Owner, when Lessee takes possession of the Premises, a security deposit as provided for pursuant to the Residential Tenancy Agreement. Nothing contained herein shall affect Lessee's obligation to remit a security deposit at the time Lessee moves into the Premises (or any other designated unit) pursuant to the Residential Tenancy Agreement.

**ACCEPTED AND AGREED TO BY:**

Signed by LYNN HAMBOLU
Thu Mar 4 11:48:29 AM PST 2010
Key: 4E34DDFC; IP Address: 173.11.64.177

Signed by LYNN GEYER
Thu Mar 4 11:48:31 AM PST 2010
Key: B16619AB; IP Address: 173.11.64.177

Lynn Hambolu *(Resident)*                                     *Date*          *(Owner/Agent)*                                                    *Date*

18



Parkmerced

# RESIDENT INFORMATION SHEET

Date: **March 4, 2010**

| RESIDENT(S) OF RECORD | |
|---|---|
| *(Please complete one section for each person named as resident)* | |
| **GENERAL INFORMATION** | |
| Name:<br>Lynn Hambolu | |
| Current Address:<br>22 Grijalva Dr. | City, State, ZIP:<br>San Francisco CA 94132 |
| Telephone: | Cellular Telephone: |
| Employer: | Work Telephone: |
| E-Mail Address:<br>tavidiva@hotmail.com | |
| **EMERGENCY CONTACT INFORMATION** | |
| Name: | Relationship: |
| Current Address: | City, State, ZIP: |
| Telephone: | |

| OTHER OCCUPANTS | |
|---|---|
| Name: | Date of Birth: |
| Name: | Date of Birth: |



# UTILITY ADDENDUM: DISCLOSURE OF RESIDENT'S FINANCIAL RESPONSIBILITY FOR
# WATER, SEWER AND TRASH COLLECTION CHARGES

This utility addendum is hereby incorporated into the Residential Rental Agreement.

**A.** Lessee shall pay for water and sewer service based on an allocation formula, not actual meter reads, since water is not separately metered to the apartment units at **Parkmerced** (the "Property"), and cannot therefore be precisely billed or charged. The water and sewer bills received by Owner from the local utility(ies) will be used to calculate the charges per apartment unit. Specifically, the Lessee's bill will be calculated in the following manner: The Property's water and sewer bills will be allocated to each apartment unit at the Property based on a percentage assigned to each apartment unit based on the number of rooms in that apartment unit compared to the total amount of rooms in all apartment units at the Property. Lessee's bill will be equal to this calculated monthly percentage multiplied by the Property's water and sewer charges. Prior to allocating the Property's water and sewer bills using the method described above, Owner will deduct <u>15%</u> to account for common area usage.

**B.** Owner and Lessee agree that the exact amount of the water consumed in Lessee's unit and the exact amount of water used in the common area and other apartment units at the Property cannot be determined precisely, but that the methods described above to calculate those amounts are reasonably accurate estimates. Lessee acknowledges that under the billing method described above Lessee may be paying for water usage in the common areas or in other Lessee's units. Lessee will be billed monthly for such allocated charges. Lessee further acknowledges and understands that the amount of the monthly bill will fluctuate, depending on actual usage and actual billings from the public utilities. Lessee expressly agrees and acknowledges that these monthly charges for water and sewer usage are neither "rent," nor "base rent" as those terms are defined in the San Francisco Lesseeial Rent Stabilization and Arbitration Ordinance, but shall instead constitute a separate monetary obligation under the lease, separate and distinct from the rent to be paid for the premises, as previously set forth in the aforesaid lease. Lessee expressly acknowledges and agrees that Owner does not provide water and sewer as a housing service, and that the Lessee is financially responsible for his/her allocated share of water and sewer expenses for the Property.

**C.** All water and sewer related charges assessed to the Owner may be used to calculate the amount charged to each Lessee under the formula described above, including, but not limited to, stormwater charges, water or sewer related charges contained on tax bills, and all miscellaneous charges contained on the utility bills received from the local water and sewer providers.

**D.** The water and sewer bill will be sent to Lessee by , a third party billing provider. Lessee acknowledges that the billing provider is not a public utility. Owner reserves the right to change the third party billing provider at any time. Any disputes related to the computation of Lessee's bills will be between the Lessee and the Owner.

**E.** Lessee shall also be billed, and shall pay, for trash service by the third party billing provider. Lessee's trash bills shall be in the amount of <u>$22.00</u> per month, which amount represents the approximate per apartment unit cost incurred by Owner by the local trash provider) for trash service as of the date this Lease was signed.

**F.** Each monthly bill will include a monthly service fee of <u>$3.25</u> in addition to the water, sewer and trash charges. This monthly service fee is for administration, billing, overhead and similar expenses and charges incurred by Owner for providing water, sewer and trash billing services.

**G.** Lessee must make payment in full to Owner or the third party billing provider of the utility charges prior to the due date listed on each bill. Owner and Lessee agree that the actual cost to Owner and/or billing provider when Lessee fails to pay the utility bill on time is difficult or impossible to ascertain, but the parties agree that Owner and/or billing provider does, in the event of a late payment, incur certain costs, such as additional bookkeeping and administrative charges, additional charges from the billing provider, costs in printing and mailing late notices, lost opportunity costs of the payment, etc. Accordingly, Owner and Lessee agree that if the payment is received after the enumerated due date, Lessee shall immediately pay a late payment in the amount of <u>$7.00</u>, which is a reasonable estimate of the costs incurred.

**H.** Failure to pay any of said charges shall be considered a material breach of this Lease and Owner shall have the right to commence legal proceedings against Lessee and all occupants including but not limited to an unlawful detainer action to recover possession of the premises. Lessee agrees to pay a final bill as of Lessee's move-out day that includes estimated utility charges as of Lessee's move-out day.

Date of this Addendum: <u>March 4, 2010</u>

**Signed by LYNN HAMBOLU**
Thu Mar 4 11:49:16 AM PST 2010
Key: 4E34DDFC; IP Address: 173.11.64.177

**Signed by LYNN GEYER**
Thu Mar 4 11:49:20 AM PST 2010
Key: B16619AB; IP Address: 173.11.64.177

Lynn Hambolu *(Resident)*                              Date          *(Owner/Agent)*                                      Date



Parkmerced

# UTILITY PROVIDER INFORMATION

Community: **Parkmerced**

Apartment Address: **22 Grijalva Drive #24040, San Francisco, CA 94132**

Resident(s): **Lynn Hambolu**

The Resident is responsible for notifying the appropriate utility company on or before the move in date for the purpose of placing such utilities in Resident's name. The following utility companies (if applicable) provide service to the apartment address referenced above:

| Service | Company | Contact Number |
|---|---|---|
| Telephone Company Name: | SBC | (800) 310-2355 |
| Electric Company Name: | P.G.& E. | (800) 743-5000 |
| Cable Television Company Name: | Rick Barwick at Comcast | (415) 859-7093 |
| Natural Gas Company Name: | P.G.& E. | (800) 743-5000 |
| Internet Company Name: | Inquest 1-866-876-3278 | |

Signed by LYNN HAMBOLU
Thu Mar 4 11:49:26 AM PST 2010
Key: 4E34DDFC; IP Address: 173.11.64.177

Signed by LYNN GEYER
Thu Mar 4 11:49:29 AM PST 2010
Key: B16619AB; IP Address: 173.11.64.177

_____ Date
Lynn Hambolu *(Resident)*

*(Owner/Agent)* _____ Date



Parkmerced

3711 19th Avenue, San Francisco, CA  94132

## MOVE-IN/MOVE-OUT ITEMIZED STATEMENT

| Resident Name(s) | Community |
|---|---|
| Lynn Hambolu | Parkmerced |

| Apartment Address: | | | | |
|---|---|---|---|---|
| 22 Grijalva Drive , San Francisco, CA 94132 (24040) | | | | Preliminary Inspection By |
| Email Address | Home Phone # | Cell Phone # | Work Phone # | |
| Initial Inspection Date | Initial Inspection By | Move-In Date March 1, 2010 | Final Inspection Date | Final Inspection By | Move-Out Date |

Any questions which may later arise concerning the content or the condition of the premise shall be resolved by referring to this move-in, move-out check list. Please read and complete the following document with care.

Codes: S-Satisfactory * NCC-Needs Complete Cleaning * REP-Replace * SC-Needs Spot Cleaning * SP-Needs Spot Painting * RPR-Needs Repair *
PT-Needs Painting * SCR-Scratched

| | Move-In Inspection | Preliminary Move-Out Inspection | Move-Out Inspection | Final Est. Cost to clean or repair |
|---|---|---|---|---|
| **1. Kitchen** | | | | |
| Cabinets/Shelves/ Drawers | | | | |
| Floor Coverings | | | | |
| Walls | | | | |
| Doors | | | | |
| Ceiling | | | | |
| Countertops | | | | |
| Sink/Faucet | | | | |
| Under Sink | | | | |
| Drain/Disposal | | | | |
| Electrical Fixtures | | | | |
| Window Coverings | | | | |
| Window | | | | |
| **2. Refrigerator** | Replace: ☐ YES or ☐ NO | | | |
| Inside Parts | | | | |
| Outside | | | | |
| **3. Microwave** | Replace: ☐ YES or ☐ NO | | | |
| Inside Parts | | | | |
| Outside | | | | |
| **4. Dishwasher** | Replace: ☐ YES or ☐ NO | | | |
| Inside Parts | | | | |
| Outside | | | | |
| **5. Stove/Oven** | Replace: ☐ YES or ☐ NO | | | |
| Stove-Outside | | | | |
| Burners/Drip-pans | | | | |
| Oven Inside | | | | |
| **6. Dining Room** | | | | |
| Doors | | | | |
| Walls | | | | |
| Ceiling | | | | |
| Floor Coverings | | | | |
| Window Coverings | | | | |
| Window(s) | | | | |
| Closet(s) | | | | |
| Electrical Fixtures | | | | |
| **7. Living Room** | | | | |
| Walls | | | | |
| Ceiling | | | | |
| Floor Coverings | | | | |
| Window Coverings | | | | |
| Window(s) | | | | |
| Electrical Fixtures | | | | |
| Light Bulbs | | | | |
| **8. Hall/Stairs** | | | | |
| Walls | | | | |
| Ceiling | | | | |
| Steps/Floors | | | | |
| Handrail | | | | |
| Closets/Doors | | | | |

| | Move-In Inspection | Preliminary Move-Out Inspection | Move-Out Inspection | Final Est. Cost to clean or repair |
|---|---|---|---|---|
| **9. Master Bedroom** | | | | |
| Doors | | | | |
| Walls | | | | |
| Ceiling | | | | |
| Window Coverings | | | | |
| Window(s) | | | | |
| Floor Coverings | | | | |
| Electrical Fixtures | | | | |
| Closet(s) | | | | |
| Light Bulbs | | | | |
| **10. 2nd Bedroom** | | | | |
| Doors | | | | |
| Walls | | | | |
| Ceiling | | | | |
| Window Coverings | | | | |
| Window | | | | |
| Closets | | | | |
| Floor Coverings | | | | |
| Electrical Fixtures | | | | |
| Light Bulbs | | | | |
| **11. 1st Bathroom** | | | | |
| Ceiling | | | | |
| Walls | | | | |
| Tile/Grout | | | | |
| Cabinets/Shelves | | | | |
| Flooring | | | | |
| Doors | | | | |
| Tub/Shower | | | | |
| Drain | | | | |
| Toilet | | | | |
| Sink/Faucet | | | | |
| Electrical Fixture(s) Bulbs | | | | |
| Window(s) | | | | |
| Mirror/Med Cab | | | | |
| **12. 2nd Bathroom** | | | | |
| Ceiling | | | | |
| Walls | | | | |
| Tile/Grout | | | | |
| Cabinet/Shelves | | | | |
| Flooring | | | | |
| Window(s) | | | | |
| Doors | | | | |
| Tub/Shower | | | | |
| Drain | | | | |
| Toilet | | | | |
| Sink/Faucet | | | | |
| Electrical Fixture(s) Bulbs | | | | |
| Mirror/Med Cab | | | | |

22



Parkmerced

| 13. 3rd Bedroom | Move-In Inspection | Preliminary Move-Out Inspection | Move-Out Inspection | Final Est. Cost to clean or repair |
|---|---|---|---|---|
| Doors | | | | |
| Walls | | | | |
| Ceiling | | | | |
| Window Coverings | | | | |
| Window | | | | |
| Closets | | | | |
| Floor Coverings | | | | |
| Electrical Fixtures | | | | |
| Light Bulbs | | | | |

| 14. 3rd Bathroom | Move-In Inspection | Preliminary Move-Out Inspection | Move-Out Inspection | Final Est. Cost to clean or repair |
|---|---|---|---|---|
| Ceiling | | | | |
| Walls | | | | |
| Tile/Grout | | | | |
| Cabinets/Shelves | | | | |
| Flooring | | | | |
| Doors | | | | |
| Tub/Shower | | | | |
| Drain | | | | |
| Window(s) | | | | |
| Toilet | | | | |
| Sink/Faucet | | | | |
| Electrical Fixture(s) Bulbs | | | | |
| Mirror/Med Cab | | | | |

| 15. Balcony/Patio | Move-In Inspection | Preliminary Move-Out Inspection | Move-Out Inspection | Final Est. Cost to clean or repair |
|---|---|---|---|---|
| Floors | | | | |
| Trash Removal | | | | |
| Other | | | | |

| 16. Mechanical | Move-In Inspection | Preliminary Move-Out Inspection | Move-Out Inspection | Final Est. Cost to clean or repair |
|---|---|---|---|---|
| Heater/Furnace | | | | |
| AC Filter | | | | |
| Smoke Detector(s) | | | | |
| Thermostat | | | | |
| Other | | | | |

| 17. Garage/Car Port | | | | |
|---|---|---|---|---|
| Parking Space | | | | |
| Floor | | | | |

| 18. Storage | | | | |
|---|---|---|---|---|
| Cleaned Out | | | | |

| 19. Accessories | | | | |
|---|---|---|---|---|
| Apartment Keys | | | | |
| Mail box keys | | | | |
| Fobs | | | | |
| Storage/ Facility Keys | | | | |

| General Comments: | | |
|---|---|---|
| Clean Carpet | ☐ YES - ☐ NO | $ |
| Replace Carpet | ☐ YES - ☐ NO | $ |
| Full Clean | ☐ YES - ☐ NO | $ |
| Full Paint | ☐ YES - ☐ NO | $ |

| Preliminary Move-Out Inspection: Total Estimated Costs of repairs, cleaning, and replacements. | | Preliminary Inspection By | Date |
|---|---|---|---|
| Preliminary Estimate | $ | | |
| Final Charges | $ | Final Inspection By | Date |

**Note: This estimate does not include any additional amounts due under the terms and conditions of the lease. Such amounts can include but are not limited to rent, late fees, utilities, concessions, etc.**

**MOVE-IN**

_____

*(Resident)*                                    *Date*

**FINAL INSPECTION**

_____

*(Resident)*                                    *Date*

**Move-In:** The resident accepts the premises with the contents and in the condition as listed on this form at the time of move-in. The resident assume responsibility for surrendering the premises to the agent in the same condition as listed on this form at the time of move-out, exclusive of wear and tear.

**Move-Out:** The security deposit will be used for legal deductions itemized in this statement that are corrected by the resident prior to the termination of the tenancy or that were not identified due to the presence of the Resident's possessions during the time of the initial inspection. It also allows Owner/Agent to use the security deposit to correct any damages that occur to the apartment/property between the time of the initial inspection and the termination of tenancy.

**According to State Law:** Any security shall be held by the landlord for the tenant who is party to the lease or agreement. The claim of a tenant to the security shall be prior to the claim of any creditor for the landlord. (Civil Code Section 1950.5 (d) ) . According to Civil Code Section 1950.5 (b), "security" means any payment, fee, deposit or charge, including, but not limited to, any payment, fee, deposit, or charge, except as provided in Section 1950.6, that is imposed at the beginning of the tenancy to be used to reimburse landlord for costs associated with processing a new tenant or that is imposed as an advance payment of rent, used or to be used for any purpose, including, but not limited to, any of the following: (1) The compensation of a landlord for a tenant's default in the payment of rent. (2) The repair of damages to the premises, exclusive of ordinary wear and tear, caused by the tenant or by a guest or licensee of the tenant. (3) The cleaning of the premises upon termination of the tenancy necessary to return the unit to the same level of cleanliness it was in at the inception of the tenancy. The amendments to this paragraph enacted by the act adding this sentence shall apply only to tenancies for which the tenant's right to occupy begins after January 1, 2003. (4) To remedy future defaults by the tenant in any obligation under the rental agreement to restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear, if the security deposit is authorized to be applied thereto by the rental agreement.



Parkmerced

**Comments:**





# SUREDEPOSIT
## CALIFORNIA ENROLLMENT & BOND ACKNOWLEDGEMENT
### License Number 0D35043



ALLRESCO
ARC157

## PLEASE READ THE FOLLOWING BEFORE SIGNING:

**I intend to be legally bound, and I understand and voluntarily agree that:**

I am enrolling on a bond that Bankers Insurance Company (Surety) issued for the benefit of the apartment community named on page two. **The premium that I am paying for the Bond is <u>not</u> a security deposit, and I will not receive the premium back at the end of my lease. Moreover, this bond is not liability or other insurance, and thus does not relieve me of any responsibilities I have under the lease, including responsibility for physical damage to the property or for unpaid rent.**

The bond is for the amount listed after "Bond Coverage Amount" on page two. The bond provides coverage for damages that I may be responsible for under the lease and under law, including physical damage to the apartment (beyond normal wear and tear) or for any unpaid obligations under my lease agreement, such as unpaid rent or fees ("Covered Damages"), up to the Bond Coverage Amount. **Therefore, if the apartment community makes a claim for Covered Damages, and provided the apartment community first complies with Civil Code § 1950.5, Surety will be obligated to pay the claim for Covered Damages, including any collection expenses, court costs, and attorney fees, but not to exceed the Bond Coverage Amount. I will then be obligated to reimburse Surety the amount of the claim.**

Nothing in this agreement limits the apartment community from first applying any money that I have on deposit with the apartment community to pay the claim. Moreover, if Surety pays a claim on my behalf, it will then seek to collect reimbursement from me. If this happens, subject to all applicable legal limitations, I authorize anyone to furnish Surety (or its employees or agents or assigns) any information that will assist Surety in collecting the money I owe. Moreover, the apartment community and the Surety are not affiliated in any manner, and the apartment community is not responsible for the actions that Surety takes during any collection efforts. I understand that if I fail to pay money that I owe to Surety as a result of my obligations under this bond:  a) my credit rating may get worse; b) I might have trouble renting an apartment; and c) I might have trouble getting insurance coverage.

## THIS IS PART OF THE AGREEMENT. PLEASE READ CAREFULLY

1)   This constitutes our entire agreement, which supersedes all prior agreements and understandings pertaining thereto, and I am solely relying on what is written in this document, and not relying on any oral representations or promises.

2)   The parties hereto shall have all remedies for breach of this Agreement available to them provided by law.

3)   This agreement is not intended to be for the benefit of and shall not be enforceable by any person who or which is not a party hereto.

4)   Neither Party may assign or delegate any of its rights or obligations under this agreement, although Surety may assign this agreement and any resulting judgment, for purposes of collection.

5)   I understand that Surety and apartment community are independent and unaffiliated companies, and, that they are therefore not agents, joint venturers, partners, parents, or subsidiaries of one another. Therefore, I understand that the apartment community is not responsible for the conduct of the Surety, and the Surety is not responsible for the conduct of apartment community.

6)   I am enrolling in the bond program voluntarily, and not under the pressure, influence or recommendation of any person. I fully understand that I don't have to enroll in this program. But after considering the matter, I choose to enroll because I believe that it makes sense for me to do so.

**7)   I have had sufficient opportunity and time to review this agreement.**

**RESCISSION RIGHTS: Within five (5) Calendar Days** of signing this Bond Enrollment Form, I may rescind this bond enrollment for a full refund, PROVIDED I post a security deposit with the apartment community in cash or by cashier's check in the amount that it deems satisfactory, and PROVIDED that I also submit to SureDeposit both a written notice of rescission and satisfactory proof that I have posted the security deposit required by the apartment community.

## THIS IS OUR ENTIRE AGREEMENT, AND I AM NOT RELYING ON ANY ORAL PROMISES OR STATEMENTS.



# SUREDEPOSIT
## CALIFORNIA ENROLLMENT &
## BOND ACKNOWLEDGEMENT



| Bond Number: BIC FCIC AZ 1296-1303 | **SUREDEPOSIT License Number 0D35043** |
|---|---|

ALLRESCO
**Park Merced**
Street Address: 22 Grijalva Drive _____ Building #_____ Apartment# 24040 _____

ID: **ARC157**    HTID: 1163975

State and Zip code: San Francisco, CA, 94132

**Effective Date (Move in Date)** 3/1/2010 _____

| Resident | First Name | MI | Last Name | Date of Birth |
|---|---|---|---|---|
| 1 | Lynn | | Hambolu | 10/30/1960 |



**Make Payments To: SureDeposit   293 Eisenhower Parkway   Suite 320   Livingston, NJ  07039-1711**

| | |
|---|---|
| **SECURITY BOND COVERAGE AMOUNT:** | $1,000.00 |
| **NON-REFUNDABLE PURCHASE PRICE:** | $175.00 |
| **REFUNDABLE DEPOSIT DUE TO COMMUNITY:** | $1,000.00 |

**YOUR SIGNATURE BELOW ACKNOWLEDGES THAT YOU HAVE BEEN SHOWN PAGE 1 OF THIS AGREEMENT.**

_____     _____     _____
Signature of Resident #1          Signature of Co-Signer or Guarantor          Signature of Witness

Thank you, and welcome to SureDeposit.
If you have questions or concerns about this exciting program, please visit our website at www.suredeposit.com, or call a customer service representative at 877-531-7873.   We welcome your calls and feedback.

ARC157

# FREQUENTLY ASKED QUESTIONS

**What is SureDeposit?**
The SureDeposit program is based on a simple concept: rather than pay a full security deposit to a property company, residents may choose to pay a one-time premium to SureDeposit.  When a resident elects to use the SureDeposit program, he signs a surety bond that replaces (or supplements) a traditional security deposit. SureDeposit guarantees the performance of a resident according to the terms of a lease agreement signed with the property company. The resident promises to return the unit in good condition, and to satisfy all rental and financial obligations. If the resident does not meet his obligations, he is required to reimburse SureDeposit up to the coverage amount of the bond, and to reimburse the property company for outstanding obligations in excess of the coverage amount of the bond.

**What is a surety bond?**
A surety bond is a written agreement that usually provides for monetary compensation in case the *principal* (see below for definition) fails to perform the acts as promised. A surety bond is created whenever one party guarantees performance of an obligation by another party. There are three parties to the agreement, as defined by the Surety Association of America (www.surety.org).
> The **principal** is the party that undertakes the obligation. (The **Resident**)
> The **surety** guarantees the obligation will be performed. (**SureDeposit**)
> The **obligee** receives the benefit of the bond. (The **Property Company**)

**How do I sign up?**
Once you complete the SureDeposit enrollment form and pay the required one-time, non-refundable premium to SureDeposit, you are enrolled when your new lease is approved.

**What happens at the end of my lease term if I have honored all the terms and conditions of my lease?**
You simply move out without any further obligations.

**What happens upon move-out, if I owe rent or fees, or have caused damage to my apartment?**
If you have not fulfilled your lease obligations you will be required to reimburse SureDeposit for any damages, loss of rent and related expenses, such as legal and collections fees that SureDeposit may have paid on your behalf.  If your obligations exceed what SureDeposit has paid on your behalf you may also be required to reimburse the property company for the excess.

**How long is the property company covered for by me paying this one premium today?**
Coverage is purchased for the benefit of the property company and is intended to remain in force for the duration of your tenancy.  However, if your apartment community is sold, we cannot warrant that the new owner will keep the bond in force, and you may be required to post a security deposit upon lease renewal in accordance with applicable landlord/tenant law.

**What happens if I move to another apartment in this apartment community?**
Typically the SureDeposit coverage can move with you to the new unit in this apartment community or any other community your property company has participating in the SureDeposit program.  Check with your leasing agent or community manager for your community's specific guidelines.

**Are there any other costs for SureDeposit?**
No – your one-time premium is all you pay if you have fulfilled your lease obligations.

**Do I get my premium back at the end of my lease?**
No – your premium is non-refundable.

**If I do owe fees, rent, or damage expense, can I pay it directly to the apartment community?**
Yes. That is the best thing to do. Once the outstanding monies are paid to the apartment community, no claim will be filed and you will have no obligation to the Surety.

**Is SureDeposit right for me?**
This is a personal decision for you, as only you can determine the importance of freeing up the cash that would have been tied up in a security deposit. Because the premium for SureDeposit is paid only once, the longer you plan on staying in your apartment, the better the deal is for you.

For more information, please go to www.suredeposit.com/residents, or call 1 877 531 SURE (7873).
Offered in California by SureDeposit Insurance Agency, LLC   License: 0D35043

# EXHIBIT 2

AUM BILLING METHODOLOGY



**Allocation | RUBS Estimated Occupancy (Bedroom) – Water/Sewer**

## "RUBS" Is An Acronym For Ratio Utility Billing System

- The purpose of this program is to encourage responsible water & sewer usage by having residents pay for a portion of the property's total water & sewer utility costs.
- Each resident will be billed for his or her allocated portion of the property's costs.
- There are no individual water & sewer meters inside residents' apartments. Residents are charged for their proportionate share of the property's total water expense.

The allocation formula is based on the estimated occupancy for each unit. The number of bedrooms in each unit determines the estimated occupancy as shown in the table below. The estimated occupancy in the tenants unit is divided by the total estimated occupancy in all dwelling units regardless of the actual number of occupants or occupied units.  Billing is not based upon individual metering.

| Number of Bedrooms | Estimated Occupants |
|---|---|
| 0 (Efficiency) | 1.0 |
| 1 | 1.6 |
| 2 | 2.8 |
| 3 | 4.0 |
| >3 | 4.0+1.2 for each additional bedroom |

Furthermore, the property's utility costs may be reduced by some percentage for allocation of common area usage.  This cost is absorbed by the property, thus reducing the amount of the bill allocated to the individual residents.

### Generic Example – This is not an actual calculation of your bill

Assume the number of bedrooms in Unit X is 2. The estimated occupant count is 2.8, while the sum of all estimated occupants for all units on the property is 521.

To arrive at the unit's individual percentage of the overall water & sewer bill, divide the estimated occupant number for unit X by the total of all estimated occupants for all units. In this case the percentage is 0.005374%.

Assume the property has a $2,000 water & sewer bill, and absorbs 30% of these bills for common area.  The total cost available to allocate to the residents would be $1,400 ($2,000 - (30% x $2,000)).

Take unit X percentage and apply it to the property's water bill available for allocation to arrive at the residents' bill. In this case, it would be $1,400 x 0.005374% = $7.52.

If additional charges such as base and billing fees are applied to resident statements they will be listed as separate line items. Please note other utility charges may have different billing methodologies. Trash is a fixed fee based on sq. ft.

# EXHBIT 3

SECOND THREE DAY NOTICE WITH DIFFERENT AMOUNT

# THREE DAY NOTICE TO PERFORM COVENANT OR QUIT

*THIS THREE DAY NOTICE SUPERSEDES ANY THREE DAY NOTICE PREVIOUSLY SERVED UPON YOU.*

*To* **Lynn Hambolu,** an individual, and **ALL OTHER LEASEHOLDERS IN POSSESSION.**

Premises at Parkmerced to which this NOTICE relates:

**22 Grijalva Drive**
**San Francisco, California 94132**

Including all parking spaces, common, and storage areas associated therewith (hereinafter referred to as the "subject premises")

**YOU ARE HEREBY NOTIFIED** that the written lease agreement and all addendums thereto, including the *Utility Addendum: Disclosure of Resident's Financial responsibility for Water, Sewer and Trash Collection Charges* (hereinafter referred to as the "Lease Agreement"), under which you hold possession of the subject premises, requires performance on your part of the following leasehold covenants, contained within the *Utility Addendum: Disclosure of Resident's Financial responsibility for Water, Sewer and Trash Collection Charges,* which you have recently failed to perform:

**Lessee shall pay for water and sewer service based on an allocation formula....**
**The water and sewer bill will be sent to Lessee by a third party billing provider....**
**Lessee shall also be billed, and shall pay, for trash service by the third party billing provider....**
**Lessee must make payment in full to Owner or the third party billing provider of the utility charges prior to the due date listed on each bill....**
**Failure to pay any of said charges shall be considered a material breach of this Lease and Owner shall have the right to commence legal proceedings against Lessee and all occupants including but not limited to an unlawful detainer action to recover possession of the premises.**

Parkmerced (hereinafter, the "Landlord") recently discovered that these leasehold covenants are being violated by your failure to pay billed utility charges in the total amount of $1,586.72.

## THREE DAY NOTICE TO PERFORM COVENANTS OR QUIT

1

**PLEASE BE ADVISED** that if the foregoing breach of leasehold covenants is not cured within <u>THREE (3) DAYS</u> after service of this NOTICE upon you (excluding the date of service) by reimbursing Parkmerced, by way of a payment made payable to Parkmerced in the amount of $1,586.72, you must vacate the subject premises and deliver possession to **WASSERMAN-STERN**, attorneys and agents for the Landlord, located at 2960 Van Ness Avenue, San Francisco, California 94109, who are authorized to receive the same, or legal proceedings may be instituted against you to recover possession of the subject premises, to declare the forfeiture of the Lease Agreement and leasehold under which you occupy the subject premises.

**YOU ARE FURTHER NOTIFIED** that the undersigned does hereby elect to declare the forfeiture of the Lease Agreement under which you hold possession of the subject premises if you fail to timely cure the breach of lease covenants set forth in this NOTICE.

**ADVICE REGARDING THIS NOTICE** is available from the San Francisco Residential Rent Stabilization and Arbitration Board located at 25 Van Ness Avenue, Suite 320, San Francisco, California. You may also call the Rent Board directly at (415) 252-4600.

The Landlord and this NOTICE comply with California Code of Civil Procedure § 1161(3) *et seq.* and the San Francisco Administrative Code (also known as the Rent Ordinance), Section 37.9(a) subsection (2), enacted in 1979, and amended thereafter, in that you as the tenant have violated a lawful obligation or covenant of tenancy.

DATED:  **August 24, 2011**

By:       DAVID P. WASSERMAN, Esq.,
                 *Attorney and Agent for the Landlord,*
                 PARKMERCED INVESTORS
                 PROPERTIES, LLC

Attorneys and agents for the landlord:
**WASSERMAN-STERN**
Attn.:  David P. Wasserman, Esq.
        2960 Van Ness Avenue
        San Francisco, CA  94109
Tel.:  415/567.9600
Fax:  415/567.9696
Copy filed with:  San Francisco Rent Board

---

**THREE DAY NOTICE TO PERFORM COVENANTS OR QUIT**

2

# EXHIBIT 4

FIRST THREE DAY NOTICE

# THREE DAY NOTICE TO PERFORM COVENANT OR QUIT

## *THIS THREE DAY NOTICE SUPERSEDES ANY THREE DAY NOTICE PREVIOUSLY SERVED UPON YOU.*

To   Lynn Hambels, an individual, and ALL OTHER LEASEHOLDERS IN POSSESSION:

Premises at Parkmerced to which this NOTICE relates:

**22 GRIJALVA DR.
San Francisco, California 94132**

Including all parking spaces, common, and storage areas associated therewith (hereinafter referred to as the "subject premises")

YOU ARE HEREBY NOTIFIED that the written lease agreement and all addendums thereto, including the *Utility Addendum: Disclosure of Resident's Financial responsibility for Water, Sewer and Trash Collection Charges* (hereinafter referred to as the "Lease Agreement"), under which you hold possession of the subject premises, requires performance on your part of the following leasehold covenants, contained within the *Utility Addendum: Disclosure of Resident's Financial responsibility for Water, Sewer and Trash Collection Charges*, which you have recently failed to perform:

Lessee shall pay for water and sewer service based on an allocation formula....
The water and sewer bill will be sent to Lessee by a third party billing provider....
Lessee shall also be billed, and shall pay, for trash service by the third party billing provider....
Lessee must make payment in full to Owner or the third party billing provider of the utility charges prior to the due date listed on each bill....
Failure to pay any of said charges shall be considered a material breach of this Lease and Owner shall have the right to commence legal proceedings against Lessee and all occupants including but not limited to an unlawful detainer action to recover possession of the premises.

Parkmerced (hereinafter, the "Landlord") recently discovered that these leasehold covenants are being violated by your failure to pay billed utility charges in the total amount of $1121.92.

PLEASE BE ADVISED that if the foregoing breach of leasehold covenants is not cured within THREE (3) DAYS after service of this NOTICE upon you (excluding the date of service)

---

THREE DAY NOTICE TO PERFORM COVENANTS OR QUIT

1

*1 of pg2*

by reimbursing Parkmerced, by way of a payment made payable to Parkmerced in the amount of $1121.92, you must vacate the subject premises and deliver possession to WASSERMAN-STERN, attorneys and agents for the Landlord, located at 2960 Van Ness Avenue, San Francisco, California 94109, who are authorized to receive the same, or legal proceedings may be instituted against you to recover possession of the subject premises, to declare the forfeiture of the Lease Agreement and leasehold under which you occupy the subject premises.

YOU ARE FURTHER NOTIFIED that the undersigned does hereby elect to declare the forfeiture of the Lease Agreement under which you hold possession of the subject premises if you fail to timely cure the breach of lease covenants set forth in this NOTICE.

ADVICE REGARDING THIS NOTICE is available from the San Francisco Residential Rent Stabilization and Arbitration Board located at 25 Van Ness Avenue, Suite 320, San Francisco, California. You may also call the Rent Board directly at (415) 252-4600.

The Landlord and this NOTICE comply with *California Code of Civil Procedure §* 1161(3) *et seq.* and the San Francisco Administrative Code (also known as the Rent Ordinance), Section 37.9(a) subsection (2), enacted in 1979, and amended thereafter, in that you as the tenant have violated a lawful obligation or covenant of tenancy.

DATED:  September 19, 2011

By: _____

DAVID P. WASSERMAN, Esq.,
*Attorney and Agent for the Landlord,*
PARKMERCED INVESTORS
PROPERTIES, LLC

Attorneys and agents for the landlord:
WASSERMAN-STERN
Attn.:  David P. Wasserman, Esq.
        2960 Van Ness Avenue
        San Francisco, CA  94109
Tel.:   415/567.9600
Fax:    415/567.9696
Copy filed with:  San Francisco Rent Board

**THREE DAY NOTICE TO PERFORM COVENANTS OR QUIT**

2

*2 of pg 2*

# EXHIBIT 5

AUM BILLING STATEMENT

**Your AUM Statement for Parkmerced**

*Visit us online at www.aum-inc.com*

| Date | Account # | Statement # | Total Amount Due |
|------|-----------|-------------|------------------|
| 09/21/11 | 1019802352 | 926683572 | |
| Utility Billing Period | | Days Billed | $1,835.39 |
| 08/01/11 - 08/31/11 | | 31 | |

### Residents

Lynn Hambolu
22 Grijalva Dr

### Contacts

Remit to:
Parkmerced

1 Varela Avenue
San Francisco, CA 94132

Questions about your Bill?
Call toll free(866) 520-1245
9:00 a.m. - 5:00 p.m. M-F

**Always write your account number on your check.**

Do not enclose written correspondence with payment
Please send written correspondence, including Change of Address to P.O. Box 4957, Oak Brook, IL 60522-4957

### Summary of Charges

**Current Charges**

| | |
|---|---|
| Beginning Balance | $1,648.21 |
| October Rent | $79.00 |
| Sewer | $50.02 |
| Trash | $29.00 |
| Water | $26.41 |
| AUM Admin Charge | $2.75 |
| **Total Current Charges** | **$1,835.39** |
| **Total Amount Due** | **$1,835.39** |

### Message Center

The bill you have received is from AUM, Inc,. a Real Time Billing Solutions Provider, and is not from the retail public utility.

Pay your rent ONLINE! Log on to www.Parkmerced.com/portal to pay your rent and utility bill with no fee. Email services@parkmerced.com for login information.

Rent is due on the 1st of every month. Your account will be assessed a Late Fee if payment is not received within five (5) calendar days of the due date.

Beginning Balance may not reflect recent payments.
If you have any questions or need additional assistance regarding non-utility charges on this statement, please feel free to contact Parkmerced Resident Services at (415) 405-4690.

---

DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT

1019802352   P3468

| | |
|---|---|
| Total Due | **$1,835.39** |
| Date Due | **October 1, 2011** |
| Amount Enclosed | |

LYNN HAMBOLU

22 GRIJALVA DR
SAN FRANCISCO,  CA   94132

PARKMERCED

1 Varela Avenue
San Francisco, CA 94132

2746 1019802352 183539 000000 926683572 09212011 9

# EXHIBIT 6

CEASE AND DESIST LETTER FROM
PANAMA CITY BEACH, FLORIDA
CITY ATTORNEY



**Attorneys At Law**

## HARRISON SALE McCLOY

AMY E. MYERS

amyers@HSMcLaw.com

304 Magnolia Avenue
Post Office Drawer 1579
Panama City, Florida 32401

T 850 769 3434 F 850 769 6121

August 16, 2012

Stone Harbor Partners II, Ltd
1551 Sandspur Road
Maitland, FL 32751

## NOTICE OF VIOLATION and ORDER TO CEASE AND DESIST

My firm represents the City of Panama City Beach. It has come to the City's attention that you are operating a utility system for the Stone Harbor Apartment Community in violation of City Code Section 23-14, and charging usurious rates which are far out of line with the City's rates set forth in Sections 23-60 and 23-80 of the City's Code.

YOU ARE HEREBY DEMANDED TO IMMEDIATELY CEASE AND DESIST THE PROVISION OF WATER, SEWER AND REUSE WATER UTILITY SERVICES TO RESIDENTS OF THE STONE HARBOR APARTMENT COMMUNITY AT RATES THAT EXCEED THOSE CHARGED BY THE CITY. FURTHER, THE CITY DEMANDS THAT ON OR BEFORE AUGUST 31, 2012 YOU DELIVER TO CITY HALL COPIES OF ANY AND ALL PAPERWORK THAT YOU ARE RELYING ON TO ASSESS THOSE RATES TO RESIDENTS OF THE STONE HARBOR APARTMENT COMMUNITY, WHICH SHOULD INCLUDE BUT NOT BE LIMITED TO DOCUMENTATION ILLUSTRATING YOUR ACTUAL COSTS OF OPERATING THE UTILITY, AND THE NOTICES, APPLICATIONS AND APPROVALS REGARDING THE RATE STRUCTURE YOU ARE ASSESSING ON CONSUMERS OF YOUR UTILITY.

If you choose to disregard the City's demands and continue to operate your utility system in violation of City Code, please be advised that the City may file a lawsuit against you to enjoin this activity and pursue all other available remedies. Likewise, if you do not submit documentation justifying your rates and costs to operate the utility to the City's Engineering Department by August 31, 2012, the City will assume your intent to continue to disregard these Code requirements, and govern itself accordingly.

Thank you for your attention to this matter. The City is aware of the master meter on your property, and while we will not begrudge you the opportunity to recover any actual costs you may be incurring by outsourcing your billing to a third party, we request that you provide a written response to this matter to Al Shortt, City Engineer, 110 South Arnold Road, Panama City

Nicholas A. Beninate · Robert A. Fleming III · Franklin R. Harrison · Robert C. Jackson · Heather K. Hudson · Andrew H. Less · Dixon Ross McCloy, Jr
Dion J. Moniz · Amy E. Myers · Kevin D. Obos · Douglas J. Sale · Melissa F. Sale · Cnuitus Appleman Thacker · C. Andrew Weddle · H. Ban Thompson (1937–2006)

Stone Harbor Partners II, Ltd.
August 16, 2012
Page 2 of 2


Beach, Florida 32413, ashortt@pcbgov.com, on or before August 31, 2012, so that we may begin
to resolve any misunderstandings with regard to this matter.

Very truly yours,

Amy E. Myers
Assistant City Attorney

cc:   Stone Harbor Partners II, Ltd
      And SAS Stone Harbor II Managers, LLC
      700 West Morse Blvd, Suite 101
      Winter Park, FL 32789

      Stone Harbor Partners II, Ltd
      P.O.Box 941688
      Maitland, FL 32794-1688

      American Utility Management Inc.
      2211 South York Road, Suite 320
      Oak Brook, IL 60523

      Mayor Gayle Oberst
      Josie Strange, Councilwoman, Ward 3
      Mario Gisbert, City Manager
      Al Shortt, City Engineer

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☑ )

BHUU DELE HUMBOLO, LYNN GAVIN AND DOES 1-10

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

FORTRESS INVESTMENT GROUP, LLC AND DOES 1-10.

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES) SAN FRANCISCO

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY) LOS ANGELES

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☑ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multidistrict Litigation - Transfer
☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 USC 1692, 42 USC 1983, Title VIII, Fraud, Breach of Contract, and More

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: CV 17-01233

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE**: Your answers to the questions below will determine the division of the Court to which this case will be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no, " skip to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
|  | ☐ Orange | Southern |
|  | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | | |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no, " skip to Question C.  If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Southern Division.  Enter "Southern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO.  Continue to Question B.2. |
|  | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Eastern Division.  Enter "Eastern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO.  Your case will initially be assigned to the Western Division.  Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | | |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no, " skip to Question D.  If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Southern Division.  Enter "Southern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO.  Continue to Question C.2. |
|  | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Eastern Division.  Enter "Eastern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO.  Your case will initially be assigned to the Western Division.  Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| ☐ Yes  ☒ No | ☐ Yes  ☒ No |
| If "yes," your case will initially be assigned to the<br>**SOUTHERN DIVISION.**<br>Enter "Southern" in response to Question E,  below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the<br>**EASTERN DIVISION.**<br>Enter "Eastern" in response to Question E,  below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below.  ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | *WESTERN* |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a).  IDENTICAL CASES**: Has this action been previously filed **in this court**?  ☑ NO   ☐ YES

If yes, list case number(s): _____

**IX(b).  RELATED CASES**:  Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☐ NO   ☑ YES

If yes, list case number(s): 2:14-CV-00430, 2:16-CV-05281

**Civil cases** are related when they (check all that apply):

☑ A.  Arise from the same or a closely related transaction, happening, or event;

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges.

Note:  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A.  Arise from the same or a closely related transaction, happening, or event;

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X.  SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**  _Lynn Hersh   Banielle Hamel_   DATE: 02/15/2017

**Notice to Counsel/Parties:**  The submission of this Civil Cover Sheet is required by Local Rule 3-1.  This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |